**The STATE of Ohio, Appellee,**

**v.**

**BROWN, Appellant.**

[Cite as *State v. Brown*, 146 Ohio App.3d 654, 2001–Ohio–4266.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000817.

Decided Aug. 31, 2001.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Paula E. Adams, Assistant Prosecuting Attorney, for appellee.

H. Fred Hoefle, for appellant.

PAINTER, Judge.

{¶ 1} Defendant-appellant, Brian D. Brown, pleaded guilty to burglary, a fourth-degree felony, admitting that he had trespassed into a couple's apartment while they were at home.[1] Originally, Brown had been charged with second-degree burglary,[2] but the state agreed to reduce the charge in return for his guilty plea.

{¶ 2} The prosecuting witness addressed the trial court after Brown's plea had been accepted, and explained that the incident had occurred at 3:30 in the morning, that Brown had actually attempted to open the couple's bedroom door as they slept, and that the incident had caused them a great deal of continuing stress. The court ordered that a presentence investigation and a clinical evaluation were to be completed before Brown would be sentenced.

---

1. See R.C. 2911.12(A)(4).

2. See R.C. 2911.12(A)(2).

{¶ 3}   Once the reports had been completed and reviewed, the court convened Brown's sentencing hearing.   Brown recalled in the clinical evaluation that he had consumed approximately ten to twelve beers during the evening prior to the early-morning offense and that his friends had dropped him off at an intersection near his home.   As he walked home, Brown reported, he noticed that a car's dome light was on, so he knocked on the door of a first-floor apartment in an adjacent building to try to locate the owner.   He claimed that the first-floor apartment dweller had referred him to the second-floor apartment in which the victims resided.

{¶ 4}   Brown said that he knocked on the door of the victims' apartment but, having received no response, decided to enter the apartment through a second-floor window.   He reported that he was yelling his name the entire time and asking whether anyone was at home.   But just as he made it into the apartment, according to Brown, the male occupant emerged from the bedroom, ordered him to leave, and called the police.

{¶ 5}   Having been shown the portion of the clinical evaluation that stated Brown's version of events, the victim asked to address the court to highlight some inconsistencies.   The male victim stated that Brown never knocked on the door or called out as he was entering through the window.   He said that he and his partner were awakened when Brown began fiddling with the bedroom door.   He also seemed to dispute that the dome light in his car had been on.

{¶ 6}   But the victim went further than addressing inconsistencies and informed the court that Brown had been banned from a local gym for scaling the outside of the building to peek at women in the showers.   An arresting officer's statement included with the court-ordered reports indicated that the officer had called the gym and confirmed the allegation.   The victim also claimed that Brown had been charged with attempted rape in high school, but there was nothing in the record to support this allegation.

{¶ 7}   The court sentenced Brown to twelve months of incarceration, explaining to him in the process that he was certainly a liar and might be "sexually perverted."   In recording its findings under the felony sentencing guidelines, the court concluded that (1) Brown was not amenable to community control,[3] (2) a prison term was consistent with the purposes of felony sentencing,[4] and (3) the seriousness of the offense and the likelihood that Brown would commit future crimes weighed in favor of a prison term.[5]   But the court did not find applicable

---

3.  See R.C. 2929.13(B)(2)(a).

4.  See R.C. 2929.13(B)(2)(a) and R.C. 2929.11.

5.  See R.C. 2929.13(B)(2)(a) and 2929.12(B) through (E).

any of the nine enumerated factors legislated to guide the court in sentencing those offenders found guilty of fourth- or fifth-degree felonies.[6]

{¶ 8}   The court concluded the relevant portion of the record by reasoning that the offense was very serious, that the state had reduced the charge, and that Brown had neither admitted his true intent in entering the apartment nor shown any remorse.

{¶ 9}   Brown now appeals his sentence and raises two assignments of error. First, Brown believes that the court's failure to find any of the nine statutory factors enumerated as sentencing guidelines for a fourth-degree felony precluded, as a matter of law, the imposition of a prison term.   Second, Brown maintains that the court improperly relied upon the victim's unsubstantiated allegations of other improprieties in sentencing him.   We overrule both of Brown's assignments of error and affirm the sentence imposed by the court.

{¶ 10}   We begin by noting that when a trial court sentences a felon, the legislature has granted the court "discretion to determine the most effective way to comply with the purposes and principles of sentencing."[7]   We also note that even though the court may have exercised its discretion in arriving at the felon's sentence, we may not review the court's decision according to an abuse-of-discretion standard.[8]   Rather, we must vacate or change the sentence if we find, by clear and convincing evidence, that the record does not support the court's findings or that the sentence is otherwise contrary to law.[9]

{¶ 11}   The court sentenced Brown to twelve months of incarceration. Generally, "a court that imposes a sentence upon an offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in sections 2929.14 to 2929.18 of the Revised Code."[10] Because a prison term of six to eighteen months is authorized by statute as a penalty for conviction of a fourth-degree felony,[11] it would initially appear as though Brown's contention that his twelve-month sentence was contrary to law is obviously erroneous.   But while Brown's argument is flawed, the analysis is not that simple.

---

6.   See R.C. 2929.13(B)(1)(a) through (i).

7.   See R.C. 2929.12(A).

8.   See R.C. 2953.08(G)(2).

9.   See R.C. 2953.08(G)(2)(a) and (b).

10.   See R.C. 2929.13(A).

11.   See R.C. 2929.14(A)(4).

{¶ 12} Whatever confusion there may be on this issue stems from R.C. 2929.13(B)(2)(a) and (b), which limit the court's general discretionary authority to impose one of the many authorized sanctions. Specifically, if the court finds (1) that at least one of nine enumerated factors is applicable, (2) that a prison term is consistent with the purposes and principles of sentencing, and (3) that the offender is not amenable to an available community-control sanction, then the court has no choice but to impose a prison term.[12]

{¶ 13} Alternatively, if the court (1) finds none of the nine enumerated factors to be applicable, and (2) concludes that community-control sanctions are consistent with the purposes and principles of sentencing, then the court must impose a community-control sanction.[13]

{¶ 14} In this case, the court did not find one of the nine enumerated statutory factors, so the court was not required to impose a prison term. But the court also found that Brown was not amenable to community control. Thus, the court was not required to impose a community-control sanction either. Because the court's discretion was not limited by the special circumstances contemplated in R.C. 2929.13(B)(2)(a) and (b), those sections became irrelevant. The court was then free to apply its discretion in conformance with the more general provisions of the felony sentencing statute.

{¶ 15} It is true that R.C. 2929.13(B)(2)(a), if read in isolation, might arguably be interpreted to require the existence of all three findings *before* an offender is sentenced to a prison term for a fourth-degree felony. This potential misunderstanding is exacerbated by the directions included on the felony sentencing worksheet that the trial court used to record its findings. The directions stated that the court should impose a prison sentence "only if" at least one of the nine enumerated factors applied and the two other findings were made. But a sentencing worksheet may not require what the statute does not.

{¶ 16} Thus, we have explicitly held that, absent one of the nine enumerated factors in R.C. 2929.13(B)(1), "a trial court may still impose a prison sentence * * * if it finds that, consistent with the purposes and principles of sentencing, an offender is not amenable to community control."[14] That this was the intent of the legislature is further supported by R.C. 2953.08(A)(2), which gives the

---

**12.** See R.C. 2929.13(B)(2)(a).

**13.** See R.C. 2929.13(B)(2)(b).

**14.** See *State v. Brewer* (Nov. 24, 2000), Hamilton App. No. C–000148, 2000 WL 1732335. See, also, *State v. Pierani* (May 16, 2001), Hamilton App. No. C–000472; *State v. Chambers* (Mar. 25, 1999), Cuyahoga App. No. 73959, 1999 WL 165990; *State v. Howard* (Sept. 11, 1998), Hamilton App. No. C–971049, 1998 WL 597651; *State v. Ditterline* (Sept. 5, 1997), Washington App. No. 96CA47, 1997 WL 567944.

offender the right to appeal his sentence under precisely the circumstances presented in Brown's appeal. Surely the legislature would not have deemed it necessary to explicitly authorize an appeal if there was no possibility of jail time—the sentence would have been contrary to law.

{¶ 17} Thus, Brown's first assignment of error, in which he argues that the trial court's failure to find one of the nine enumerated factors of R.C. 2929.13(B)(1) precluded the imposition of a prison sentence as a matter of law, is overruled. The court could still impose a prison sentence if it found that Brown was not amenable to community control.

{¶ 18} It is true that Brown's juvenile and adult records were neither relatively lengthy nor serious, but there did appear to be a continuing problem with substance abuse. And while Brown may not have intended to harm anyone, the motivation he advanced to explain his foray into the apartment was improbable. From this, the court could reasonably have concluded that Brown showed no genuine remorse and that his denial would weigh against the imposition of community-control sanctions and increase the likelihood of recidivism.

{¶ 19} But normally, in order to conclude that an offender is not amenable to community-control sanctions, a trial court should " 'have evidence that some of the available local sanctions have been tried and failed.' "[15] There is nothing in the record to suggest that Brown had ever participated in local community-control sanctions. While another court might have found that Brown should have been given an opportunity to participate in some form of local community control before concluding that those sanctions would have been ineffective, this particular trial court did not. And we cannot conclude that the record clearly and convincingly demonstrates that the court's decision was wrong. Brown's first assignment of error is also overruled to the extent that he argues that the record did not support the court's findings.

{¶ 20} In his second assignment of error, Brown argues that the trial court improperly relied upon unsubstantiated allegations of other purported misconduct in arriving at his sentence. The allegations arose in the male victim's oral and written statements, and Brown believes that the court's reliance on the allegations was evident when the court told him that he might be "sexually perverted."

{¶ 21} A trial court must give the victim of a crime the opportunity to make a statement "concerning the effects of the crime upon the victim, the circumstances

---

**15.** See *State v. Brewer* (Nov. 24, 2000), Hamilton App. No. C–000148, 2000 WL 1732335, at * 3, quoting Griffin & Katz, Ohio Felony Sentencing Law (1999 Ed.), Section 6.16, at 462.

surrounding the crime, and the manner in which the crime was perpetrated." [16] And if the victim-impact statement contains any "new material facts" upon which the court intends to rely, the defendant must be given an "opportunity to respond." [17]

{¶ 22} The victim's contention that Brown had been banned from a gym for peeking at women went beyond what the court was statutorily required to hear. But the statute does not expressly limit the content of the victim-impact statement—it only sets forth what the court is required to consider. Other information is not forbidden by statute.

{¶ 23} Further, the same allegation had been repeated in another source. It was also raised by the arresting officer's statement and recorded with the presentence investigation report. In that document, the officer related that he had verified the validity of the allegation with the gym's management.

{¶ 24} Finally, we have previously explained that an offender must be given an opportunity to respond to new material facts raised in a victim-impact statement, implicitly recognizing that allegations of other bad acts might arise in this context.[18] In this case, Brown's attorney had the information concerning the allegations prior to the sentencing hearing, and he did not request a continuance to rebut the allegations. Instead, Brown chose to attempt to rebut the allegations at the sentencing hearing by claiming that they simply were not true. The court obviously did not believe Brown.

{¶ 25} Thus Brown's second assignment of error is overruled, and the sentence imposed by the trial court is affirmed.

Sentence affirmed.

HILDEBRANDT, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

---

**16.** See R.C. 2930.14(A).

**17.** See R.C. 2930.14(B).

**18.** See *State v. Sturgeon* (2000), 138 Ohio App.3d 882, 886, 742 N.E.2d 730, 733.