[Cite as *State v. Duhl*, 2017-Ohio-5492.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2016-CA-30 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-198 |
| | : | |
| KYLE T. DUHL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of June, 2017.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. 0088253, 10 West Monument Avenue, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Defendant-Appellant, Kyle Duhl, appeals from the sentence imposed following his guilty plea to several charges, including Criminal Trespass, a fourth-degree misdemeanor, three counts of Vandalism, all fourth-degree felonies; and

Unauthorized Use of Vehicles, a first-degree misdemeanor. In support of his appeal, Duhl contends that the trial court erred by violating his right to remain silent during the sentencing hearing.

{¶ 2} We conclude that the trial court did not err in conducting the sentencing hearing. The court afforded Duhl the opportunity to speak, and when Duhl declined to do so, the court properly considered Duhl's failure to speak in the context of whether Duhl had expressed remorse for his crimes. This is a proper sentencing consideration under R.C. 2929.12(D)(5) and (E)(5). Accordingly, Duhl's sole assignment of error will be overruled, and the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 3} Duhl was indicted in August 2016 for four misdemeanors and five felonies, based on events that occurred on June 17, 2016. On that day, Duhl and four other individuals entered upon the property of several premises, including the Champaign County Preservation Alliance, All Phase Electric, B&D Freight, and Taylor Maintenance, and caused damages in excess of $76,000. Among the items damaged were several trucks and trailers, and a historical railcar. Duhl was 18 years old at the time, and two of the other participants were juveniles.

{¶ 4} On August 17, 2016, Duhl was arraigned and was released on his own recognizance. Among the conditions of his bond was that he have no contact with nor be in the presence of the other individuals involved in the crimes.

{¶ 5} Trial was set for November 8, 2016, but the trial date was vacated on October 5, 2016, when Duhl entered a guilty plea to Counts One, Four, Five, Seven, and Nine

(two misdemeanors and three felonies). These charges involved the following matters: (1) Count One, a fourth-degree misdemeanor for Criminal Trespass on the premises of the Champaign County Preservation Society; (2) Count Four, Vandalism, a fourth-degree felony for causing physical harm to the property of Taylor Maintenance in an amount more than $7,500 and less than $150,000; (3) Count Five, Vandalism, a fourth-degree felony for causing physical harm to property of B&D Freight in an amount more than $7,500 and less than $150,000; (4) Count Seven, Vandalism, a fourth-degree felony for causing physical harm to property of All Phase Electric in an amount more than $7,500 and less than $150,000; and (5) Count Nine, Unauthorized Use of Vehicle, a first-degree misdemeanor for using a salt truck without the consent of Taylor Maintenance. Duhl also agreed to make restitution of approximately $80,046, jointly and severally with any co-defendants who were convicted.[1]

{¶ 6} In exchange for the plea, the State agreed to dismiss four charges: (1) Count Two, Petty Theft, a first degree misdemeanor related to a fire-extinguisher located inside a railroad car owned by the Preservation Society; (2) Count Three, Breaking and Entering, a fifth-degree felony based on trespassing on the premises of B&D Freight and Taylor Maintenance; (3) Count Six, Breaking and Entering, a fifth-degree felony based on trespassing on the premises of All Phase Electric; and (4) Count Eight, Unauthorized Use of Vehicle, a first-degree misdemeanor, based on use of a yellow dump truck without the consent of Taylor Maintenance.

{¶ 7} The trial court accepted the plea and set a sentencing hearing for November 10, 2016. Bond was continued with the same conditions that had been previously

---

[1] The State reduced this amount to $76,546.69 at the sentencing hearing.

imposed.

{¶ 8} On October 27, 2016, the State filed a motion requesting bond revocation. The motion was based on allegations that a juvenile involved in the crime had been seen walking with Duhl and another individual on September 9, 2016. At a contempt hearing for the juvenile, the juvenile had admitted to the charge. In addition, the juvenile's mother stated that Duhl had been regularly spending time in the apartment complex where the juvenile lived, and would not leave when asked to do so.

{¶ 9} At the sentencing hearing on November 10, 2016, trial court first inquired about the bond violation. Duhl's attorney stated that Duhl had "run into" the juvenile on the street, but had not spoken to him. At that point, the trial court indicated it would reset the matter for hearing on November 30, 2016. The court also suspended Duhl's bond and said that Duhl would be taken into custody pending the revocation hearing.

{¶ 10} After speaking with Duhl, counsel indicated that Duhl wished to admit the violation. According to counsel, Duhl had some communication with the juvenile when meeting him on the street, and counsel had informed Duhl that this was sufficient to trigger a bond violation. The trial court then stressed that the State had alleged this was not an accidental meeting, and added that the matter would be set for a hearing unless Duhl wished to admit what the State had alleged.

{¶ 11} After conferring with Duhl, counsel indicated that Duhl would admit the violation as described. Duhl then admitted the violation, including that he was told to leave the apartment complex, but did not leave. When the court asked why Duhl would do this, Duhl said he was not thinking right that day. Based on the admission, the court found a bond violation and stated that the violation would be used as a sentencing factor.

{¶ 12} The State recommended a term of community control, a 180-day term in the Tri-County Jail, completion of a community-based correctional program, no contact with the co-defendants, completion of a probation incentive program, and a few other conditions. The State stressed that despite Duhl's age and lack of criminal history, the individuals involved in these crimes had gone to three different locations and four businesses at those locations, and had caused serious property damage. In addition, the State noted that the individuals had engaged in organized criminal activity by taking turns driving and crashing vehicles at four different properties. The State further stated that if community control were revoked and a prison term were imposed, the State would recommend a total of 46 months imprisonment due to the very serious economic harm that had been caused.

{¶ 13} Next, Defense counsel spoke, and stressed Duhl's age, relative lack of a criminal record, and cooperation with police. Counsel also noted Duhl's understanding that he needed to obtain a job to pay restitution. When defense counsel finished, the trial court asked Duhl if he wished to say anything, and Duhl said no. At that point, the court asked Duhl if he was currently employed; in response, Duhl stated that he did not have a job.

{¶ 14} The trial court also asked Duhl why he had come to court dressed nicely rather than being poorly dressed. Duhl answered that he had been raised to dress properly as a sign of respect for himself and people around him. Duhl further stated that being poorly dressed gives a bad impression – that people have low self-esteem or no money.

{¶ 15} At that time, the following exchange occurred:

THE COURT: I will tell you that most of the time people dress up for the Court because they want to give the Court the impression that they are taking this seriously. And they want the Court to understand that they have learned their lesson and they want to put their best foot forward.

The reason I raised this with you is because you have significant charges against you. You already heard the prosecutor recommend six months in jail. You've already been found guilty of a bond violation. And when given your chance to talk to me, talk to the Court, you chose not to.

Now the reason I asked if you had ever been on a job interview is because in a job interview you are trying to convince an employer to hire you. And when you come to Court, you're asking the Court to see your case in the best possible light that is most favorable to you. In a sense, you are auditioning for probation. I mean, the last thing I think you would want is for me to send you to prison, right?

THE WITNESS: Yes, Sir.

THE COURT: So if you think of sentencing like a job interview for community control or what is known as probation, I would think you would have a statement that you would want to give me. A lot of people will come to court and say – some of them even write it down, which is impressive. But a lot of people will tell me how sorry they were. They will apologize to the victims. They will give me some insight as to why they did what they did. They will talk about plans that they have for the future. They will talk about why they shouldn't go to prison. There is [sic] all kinds of things.

And you have nothing to say, which tells me a couple of things.

Number one, it questions the genuine remorse you have for committing the offenses. Number two, tells me you really haven't thought about what you did. Number three, it tells me you have no plan, truly, as to how you are going to pay the victims the amount of restitution that you owe. And that is all unfortunate. And what it tells me is that we've got a long way to go with you. A long way to go. We've got to reorganize your way of thinking. We have to give you some skill sets. We've got to give you some punishment. Because it's very clear to me you don't have remorse for what you did.

It's very clear to me as well that you don't fully understand the gravity of what you did. Destroying pieces of American history, really? Destroying someone's ability to employ other people? All-Phase can't make deliveries. How do you think the people preparing for the Christmas season feel because their business is in jeopardy because we have some kids going through their business destroying their property?

Taylor Maintenance employs a number of individuals in the community. Do you know what they do for a living? What they are responsible for?

WITNESS: I don't, sir.

THE COURT: They do a lot of the landscaping work in the community. They do a lot of the snow removal in the community. People depend on them for their daily lives. And here on a whim you guys go out

– and you really haven't explained to me why you did what you did. And so the only thing I can take away from your sentencing is this sense of community outrage. A sense that you would participate with others in destroying people's lives both economically as well as historically. You have presented me with no plan as to how you'll make restitution. And on top of it, you throw salt in the community wound by continuing to have contact with the very people you committed this offense with.

The only thing you have going for you right now is that you cooperated with law enforcement to the extent you did. I don't consider it full cooperation. I find the Prosecutor's version of events more credible than what you told the PSI writer. And that is why I believe you don't have genuine remorse. And the second thing you have going for you is your age.

And with regard to your age, as the lawyers know, we don't like to make a habit of sending 18-year olds to prison because your brain hasn't fully developed and your ability to make good decisions has not developed. So we are going to look at other ways to try to mold your behavior.

But I balance that, as a Judge, with the outrageous conduct that you and your buddies had on that day you were destroying property. And you need to be punished for it. So we are going to give you punishment and then we'll set you on a course to actually prepare yourself for your probationary period. And if you are successful, you and I won't see each other in this courtroom again. If you don't take it seriously or you are

unsuccessful, then you'll have a significant amount of prison hanging over your head. Do you understand all that?

WITNESS: Yes, sir.

THE COURT: Do you have any comments that you would like to make?

WITNESS: Yes, Sir.

THE COURT: You really needed your lawyer to tell you what to say?

WITNESS: I didn't know if I should. I don't know if it is a good choice to, but yes.

THE COURT: What would you like to say?

WITNESS: I would like to say I'm sorry for all the mistakes I've done and all the stuff I've done in the past. And I will never think about doing all the mistakes that happened in the past in the future. And I intend to be a better person in the future.

Transcript of Sentencing Hearing, pp. 16-21.

{¶ 16} Following these remarks, the trial court sentenced Duhl to the following terms: five years of community control with standard conditions and with special conditions of restitution of $76,546.69 and court costs; admission and completion of the SEPTA community-based correctional facility program; assessment and completion of programming ordered by the West Central Probation Incentive Program; 180 days in the Trial County Regional Jail from November 10, 2016, through May 8, 2017; substance abuse and alcohol assessments and completion of counseling for such; a curfew of 9:00

p.m. to 6:00 a.m. upon release from SEPTA, obtaining employment upon release, refraining from use of drugs and alcohol; and no contact with the co-defendants.

{¶ 17} Furthermore, the court stated that if community control were revoked, Duhl would receive total jail and prison terms of 46 months, with the sentences on Counts Four, Five, and Seven being consecutive to each other but concurrent with the other sentences. In addition, the court imposed the maximum possible sentence for Count Four. Duhl timely appealed from the court's judgment.

## II. Right to Remain Silent

{¶ 18} Duhl's sole assignment of error states that:

The Trial Court Erred in Violating Mr. Duhl's Right to Remain Silent.

{¶ 19} Under this assignment of error, Duhl contends that the trial court erred by punishing him for invoking his right to remain silent during the sentencing hearing. In this regard, Duhl points to the fact after he invoked his right to remain silent, the court engaged him in a discussion about the importance of dressing properly and making a good impression. In addition, Duhl argues that the court continued to condemn him for remaining silent.

{¶ 20} Crim. R. 32(A) requires trial courts to give defendants an opportunity to speak during sentencing hearings. " 'The purpose of allocution is to permit the defendant to speak on his own behalf or present any information in mitigation of punishment.' " (Citations omitted.) *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 85. We have stressed that "[t]he 'Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse.' "

*State v. Yates*, 195 Ohio App.3d 33, 2011-Ohio-3619, 958 N.E.2d 640, ¶ 19 (2d Dist.), quoting *State v. Green*, 90 Ohio St.3d 352, 359–360, 738 N.E.2d 1208 (2000).

{¶ 21} Nonetheless, the opportunity to speak does not mean a defendant must speak during a sentencing hearing. " 'Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.' " *Mitchell v. United States*, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), quoting *Estelle v. Smith*, 451 U.S. 454, 463, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

{¶ 22} In *Mitchell*, the trial court held that the defendant's guilty plea removed her right to remain silent about the details of her crimes. *Id.* at 319. The amount of drugs sold bore on the length of her sentence, and the court relied on testimony of co-defendants at the sentencing hearing rather than the sales documented during the co-defendants' trial. *Id.* at 318-319. In sentencing the defendant for a higher degree of drugs sold (and, therefore, a greater prison sentence), the trial court remarked that it had been persuaded by the co-defendant's testimony because the defendant failed to testify to the contrary. *Id.* at 319.

{¶ 23} After considering the matter, the Supreme Court of the United States held that adverse inferences cannot be drawn from a defendant's refusal to testify during a sentencing hearing. In this regard, the court observed that:

> The rule against adverse inferences is a vital instrument for teaching
> that the question in a criminal case is not whether the defendant committed
> the acts of which he is accused. The question is whether the Government
> has carried its burden to prove its allegations while respecting the

defendant's individual rights. The Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege. Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility * * * is a separate question. It is not before us and we express no view on it.

*Mitchell,* 526 U.S. at 330.

{¶ 24} Recently, the United States Supreme Court noted that it had framed its holding in *Mitchell* "narrowly, in terms implying that it was limited to inferences pertaining to the facts of the crime * * *." *White v. Woodall*, 134 S.Ct. 1697, 1703, 188 L.Ed.2d 698 (2014), citing *Mitchell*, 526 U.S. at 328. The court also noted that *Mitchell* had expressly reserved the issue of whether silence is relevant to decisions about lack of remorse or accepting responsibility. *Id.*

{¶ 25} *White* was a death penalty case in which the Kentucky Supreme Court originally found no error in the trial court's denial, during the sentencing phase, of a blanket instruction that the defendant was " 'not compelled to testify and the fact that the defendant did not testify should not prejudice him *in any way*." (Emphasis sic.) *Id*. at 1704. The Supreme Court concluded that this decision was not " 'objectively unreasonable' " for purposes of federal habeas relief. (Citation omitted.) *Id.*

{¶ 26} In this context, the court relied on two points: (1) "if *Mitchell* suggests that some actual inferences might be permissible at the penalty phase, it certainly cannot be read to require a *blanket* no-adverse-inference instruction at every penalty-phase trial"; and (2) "regardless of the scope of respondent's proposed instruction, any inferences that

could have been drawn from respondent's silence would arguably fall within the class of inferences as to which *Mitchell* leaves the door open." (Emphasis sic.) *Id.* at 1704. Thus, because the defendant pled guilty to the charges, including aggravating circumstances, his admissions had established all relevant facts on which the State had the burden of proof. As a result, there were reasonable arguments that *Mitchell* did not even apply. *Id.*

{¶ 27} "Ohio courts * * * have consistently held that a defendant's silence at sentencing may not be used against him in fashioning a sentence." (Citation omitted.) *State v. Hodges*, 8th Dist. Cuyahoga No. 101145, 2014-Ohio-4690, ¶ 11. However, courts have also stressed that "lack of remorse is a sentencing factor under R.C. 2929.12(D)(5). Thus, even where a defendant does not speak at sentencing, the court's statement that the defendant demonstrated a lack of remorse and an unwillingness to take responsibility, does not demonstrate that a court's sentencing decision is based upon the silence but shows only that the court was considering the statutory sentencing factors." *Id.*, citing *State v. Clunen*, 7th Dist. Columbiana No. 12 CO 30, 2013-Ohio-5525, ¶ 21, and *State v. Moore*, 11th Dist. Geauga No.2011-G-3027, 2012-Ohio-3885, ¶ 47.

{¶ 28} As support for his argument that the trial court improperly punished him for his silence, Duhl relies on *State v. Donald*, 7th Dist. Mahoning No. 08 MA 154, 2009-Ohio-4638. In *Donald*, the defendant was convicted of felonious assault with a deadly weapon and was sentenced to eight years in prison. *Id.* at ¶ 5. The defendant did not testify at his jury trial, and during the sentencing hearing, the trial court observed that " 'the defendant, after the victim and the police officer offered overwhelming testimony

against him, chose not to speak at all. So, evidently, he agreed that all that was true the way it was presented.' " *Id.* at ¶ 9, quoting Sentencing Transcript, p. 16.

**{¶ 29}** After citing relevant authority, including *Mitchell*, the court of appeals concluded that the trial court's statement was improper. *Id.* at ¶ 12. The court of appeals stressed that a trial "court cannot hold it against a defendant at sentencing that he refused to testify in his own trial and thus penalize a defendant for exercising his constitutional right not to testify. Moreover, the failure to testify does not mean that the defendant 'agreed that all that was true the way it was presented.' * * * In fact, the state does not dispute the impropriety of the statement." *Id.*, quoting Sentencing Transcript at p. 16.

**{¶ 30}** While the State admitted error in *Donald*, it also argued that the error was harmless, due to the evidence supporting the sentence. The court of appeals disagreed, stating that:

> Although the court had other reasons for its sentence, part of the court's sentencing rationale was based upon appellant's exercise of his rights against self-incrimination. The court relied in part upon appellant's failure to testify and on its own improper opinion that the failure to testify meant that the defendant agreed with the state's evidence. The failure to testify at one's own trial cannot be punished.

*Donald* at ¶ 16. As a result, the court of appeals vacated the sentence and remanded the case for further sentencing. *Id.* at ¶ 75.

**{¶ 31}** Although we agree with the concepts addressed in *Mitchell* and *Donald*, the case before us presents a different situation. Unlike the defendant in *Donald,* Duhl pled

guilty to the crimes. Furthermore, unlike the trial courts in *Donald* and *Mitchell*, the court here was not trying to draw adverse inferences about the circumstances of the crime in order to punish Duhl more severely. Instead, the transcript clearly indicates that the trial court's focus was on whether Duhl was remorseful for the crimes he had committed.

{¶ 32} As other cases have indicated, remorse is an appropriate sentencing factor. *Hodges*, 8th Dist. Cuyahoga No. 101145, 2014-Ohio-4690, at ¶ 11. *Accord State v. Nitsche*, 8th Dist. Cuyahoga No. 103174, 2017-Ohio-529, ¶ 32 (noting that "[e]ven where a defendant does not speak at sentencing, the court's statement that the defendant demonstrated a lack of remorse and an unwillingness to take responsibility does not demonstrate that a court's sentencing decision is based upon the silence but shows only that the court was considering the statutory sentencing factors.")

{¶ 33} Specifically, R.C. 2929.12(D)(5) requires trial courts to consider, in deciding if an offender is likely to commit future crimes, whether "[t]he offender shows no genuine remorse for the offense." Likewise, a defendant's genuine remorse indicates that he or she is not likely to commit future crimes. R.C. 2929.12(E)(5). The trial court did not attempt to have Duhl testify about details of the crime in order to enhance his sentence or to prove facts upon which the State had the burden of proof; instead, the court was simply inquiring to see if Duhl had any remorse. This was an appropriate consideration, and we see no evidence that the court punished Duhl for his silence.

{¶ 34} Accordingly, Duhl's sole assignment of error is overruled.

### III. Conclusion

{¶ 35} Duhl's sole assignment of error having been overruled, the judgment of the

trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Jane A. Napier
Sean Brinkman
Hon. Nick A. Selvaggio