[Cite as *State v. Taft*, **2019-Ohio-1565.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                          Court of Appeals No. H-18-003

        Appellee                                     Trial Court No. CRI 2017-0291

v.

Patrick Allen Taft, Jr.                          **DECISION AND JUDGMENT**

        Appellant                                  Decided:  April 26, 2019

* * * * *

James James Sitterly, Huron County Prosecuting Attorney, and Bambi
S. Couch, Assistant Prosecuting Attorney, for appellee.

Danielle C. Kulik and Kenneth R. Bailey, for appellant.

* * * * *

**MAYLE, P.J.**

**{¶ 1}** Appellant, Patrick Taft Jr., appeals the April 20, 2018 judgment of the

Huron County Court of Common Pleas sentencing him to 10 years in prison for

convictions of sexual battery.  For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} On March 24, 2017, Taft was indicted on five counts of rape in violation of R.C. 2907.02(A)(2),[1] all first-degree felonies, and five counts of sexual battery in violation of R.C. 2907.03(A)(5), all third-degree felonies. The charges stemmed from Taft engaging in sexual activity with his foster daughter, L.H., over a period of nearly 18 months, beginning when she was 16 years old.

{¶ 3} Although Taft initially denied engaging in any sexual activity with L.H., he agreed to plead guilty to two counts of sexual battery after a DNA test proved that Taft fathered L.H.'s child. The trial court accepted his pleas and found him guilty.

{¶ 4} At Taft's sentencing hearing, in addition to hearing arguments from counsel, the trial court heard from (1) L.H., whose statement was read by her "big sister" from a youth outreach program; (2) L.H.'s mother; (3) Taft's wife, Tamie Taft; (4) Taft's treating psychologist, Dr. Darlene Barns; and (5) Taft.

{¶ 5} L.H., in her letter to the court, said that Taft first raped her on August 26, 2016. Around 4:00 a.m. that day, she woke with Taft's hand over her mouth. He told L.H. to move to the floor so that they did not wake the 4-year-old foster child who shared the room with her. L.H. said that Taft raped her daily for months and she was "paralyzed with fear" each time. When L.H. cried, Taft told her that no one would believe her if she reported the abuse and insinuated that he would abuse the 4-year-old if L.H. left the

---

[1] Effective March 22, 2019, Ohio's criminal statutes were extensively amended by 2017 S.B. No. 201. None of the amendments are applicable to Taft's case, however, so all of our citations to the Revised Code refer to the former versions of the statutes that are applicable to Taft's crimes.

2.

Tafts' home. L.H. told the court that Taft knew that she had been sexually abused by her uncle and raped years earlier, and that Taft chose to put her through the same type of trauma over and over.

{¶ 6} L.H. stated that she learned that she was pregnant in February 2017, after she was removed from the Tafts' home. She "desperately prayed" that her boyfriend—not Taft—fathered the child. When she learned that Taft was the father, her "heart fel [sic] to the ground." She felt angry at Taft for raping her, sad that she would have to tell friends and family that Taft was the child's father, and terrified of the effects that the situation would have on her son. She also said that Taft and his family members harassed her "non-stop" during her pregnancy, both online and while she was working.

{¶ 7} L.H.'s letter concluded by asking the trial court to hold Taft accountable for his actions by imposing the maximum sentence.

{¶ 8} L.H.'s mother testified at the hearing. She said that after L.H. disclosed the abuse, Tamie (Taft's wife) sent Facebook messages to L.H.'s friends that included derogatory comments about L.H. and stated that Taft was the father of L.H.'s baby. L.H.'s mother asked the court to impose the most severe prison sentence on Taft because he ruined L.H.'s life by impregnating her by rape, and because L.H.'s child will inevitably suffer psychological trauma when he finds out that he was conceived by rape.

{¶ 9} Tamie also presented a statement to the court. She described Taft as steady, kind, and hard-working, and said that he was extremely remorseful. She did not blame Taft for the sexual relationship between him and L.H. Rather, Tamie blamed herself for

3.

failing to "protect" her family from L.H. and implied that L.H. was to blame because she always followed Taft around, wanted to sit on his lap, and "dance[d] around."

{¶ 10} Dr. Barns testified that she saw Taft approximately 20 times from August 2017 to January 2018. She gave Taft a "psychological sexual assessment" to determine if he was a sexual predator. Based on that assessment, Dr. Barns determined that Taft was not a sexual predator or pedophile, but was "slowly emotionally seduced, and sexually seduced" by L.H. "into living a fantasy that would fulfill some erotic need."

{¶ 11} Dr. Barns reported that Taft had no history of sexual deviancy and was "really a family man." He was very remorseful, realized that he had made a "giant mistake," and wanted to take responsibility for and help raise the child he fathered with L.H. Dr. Barns believed that Taft was not a threat to the community, would never do anything like this again, and could be rehabilitated.

{¶ 12} When it was his turn to speak, Taft said that he had been employed for over 30 years, was faithful to his wife, and the crimes were out of character for him. He apologized for the "terrible, crazy, stupid thing" that he did and expressed remorse for embarrassing his wife and ruining his family life. According to Taft, the extent of his sexual involvement with L.H. was having sex with her three times over the course of approximately one week.

{¶ 13} When the state addressed the court, it noted that Taft denied sexual involvement with L.H. from the time that the case was filed until he pleaded guilty. Although Taft finally admitted to engaging in sexual activity with L.H. after a DNA test showed that he fathered her child, he continued to deny many of the allegations of sexual

4.

abuse and continued to claim that L.H. initiated the sexual activity with him. The state also pointed out that the foster parent-foster child relationship between Taft and L.H. gave Taft the opportunity to commit his crimes. The state argued that Taft "fits neatly within the worst form of offender" and asked the court to impose a five-year sentence on each count and run the sentences consecutively.

{¶ 14} In response, defense counsel said that the court should "judge [Taft] as a human being more than * * * about what he did or didn't do." Counsel noted that L.H. was almost 18 years old when the alleged conduct happened; Dr. Barns determined that Taft was not a threat to the community; destroying Taft's family would not undo what happened; and Taft had no criminal record, was employed, and could financially support the child he fathered with L.H. if he was placed on community control.

{¶ 15} After hearing from both sides, the trial court said that it had considered the principles and purposes of sentencing in R.C. 2929.11(A)-(C). Regarding the seriousness factors in R.C. 2929.12(B), the court noted that L.H. had suffered serious psychological harm because of the repeated sexual abuse by Taft; the crime resulted in L.H. becoming pregnant and having a child that she will have to raise on her own; Taft held a position of trust as L.H.'s foster parent, which facilitated the offenses; and Taft repeated his abusive conduct, despite many opportunities to reflect on, change, and take responsibility for his actions. The court found that none of the less-serious factors in R.C. 2929.12(C) applied.

{¶ 16} As to the recidivism factors in R.C. 2929.12(D), the court found that Taft did not express genuine remorse for his offenses because, although Taft expressed remorse at sentencing, he did not have any remorse at the time of the offenses or during

the pendency of the case, denied fathering L.H.'s child until DNA test results showed that he was the father, and seemed to regret the sanction he was likely to receive, not the impact that his actions had on L.H. and her child. The court also noted, under R.C. 2929.12(E), that Taft had never been adjudicated a delinquent child, had never been convicted of or pleaded guilty to a criminal offense, and had led a law-abiding life until he committed the instant offenses.

{¶ 17} The court concluded that Taft's actions constituted the worst form of the offenses and sentenced him to five years in prison on each count. The court ordered Taft to serve the sentences consecutively, for an aggregate prison term of 10 years. The court determined that consecutive sentences were necessary to protect the public from future crimes and adequately punish Taft and were not disproportionate to the seriousness of Taft's conduct or the danger he poses to the public. The court also found that Taft committed at least two of the offenses as part of a course of conduct and the harm he caused was so great that no single prison sentence would adequately reflect the seriousness of his conduct.

{¶ 18} Taft now appeals, raising four assignments of error:

1. THE COURT ERRED IN SENTENCING PATRICK TAFT, JR. TO MAXIMUM CONSECUTIVE SENTENCES CONTRARY TO THE FACTS OF THE CASE, THE LAW, THE FACTORS OF SENTENCING, AND THE PURPOSE OF FELONY SENTENCING.

2. PATRICK TAFT, JR. SUFFERED INEFFECTIVE ASSISTANCE OF COUNSEL WHERE HE PROVIDED DEFENSE

6.

COUNSEL EVIDENCE OF MITIGATION BUT DEFENSE COUNSEL FAILED TO SUBMIT ANY AS EXHIBITS.

3. PATRICK TAFT, JR. WAS DENIED HIS DUE PROCESS RIGHT TO CROSS EXAMINE WITNESSES DURING SENTENCING.

4. PATRICK TAFT JR., WAS IMPROPERLY DENIED POST CONVICTION RELIEF ON ITS FACE AND WITHOUT A HEARING.

## II. Law and Analysis

### A. Taft's Sentences are not Contrary to Law

{¶ 19} In his first assignment of error, Taft argues that the trial court improperly imposed maximum, consecutive sentences. We review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).

{¶ 20} A sentence is not clearly and convincingly contrary to law where the trial court sentences the defendant within the statutorily permissible range, properly applies postrelease control, and expressly states that it considered the principles and purposes of

7.

sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18; *see also State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 15-16 (recognizing that, although sentences are reviewed pursuant to R.C. 2953.08 and not under the abuse of discretion standard announced in *Kalish*, an appellate court can still use *Kalish* to guide its determination of whether a sentence is clearly and convincingly contrary to law).

{¶ 21} If the appellate court finds that a sentence is not clearly and convincingly contrary to law, it may vacate or modify the sentence "only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23. Notably, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2); *Marcum* at ¶ 22-23.

{¶ 22} Taft argues (1) the trial court failed to comply with R.C. 2929.14(C)(4) before imposing consecutive sentences, (2) the trial court erred by imposing maximum sentences, (3) the trial court "ignored" mitigating evidence, and (4) the trial court should have imposed the statutory minimum sentences.

### 1. The Trial Court Properly Imposed Consecutive Sentences

{¶ 23} First, we address Taft's challenge of the trial court's imposition of consecutive sentences. Before imposing consecutive sentences, a trial court is required to make three findings: (1) consecutive sentences are "necessary to protect the public from future crime or to punish the offender * * *;" (2) imposition of consecutive sentences is not "disproportionate to the seriousness of the offender's conduct and to the danger the

8.

offender poses to the public * * *;" and (3) one of the factors in R.C. 2929.14(C)(4)(a)-(c) applies. R.C. 2929.14(C)(4). Pertinent to this appeal, R.C. 2929.14(C)(4)(b) allows the trial court to impose consecutive sentences if at least two offenses were committed as part of a course of conduct and the harm caused by the offenses was "so great or unusual that no single prison term for any of the offenses * * * adequately reflects the seriousness of the offender's conduct."

{¶ 24} A sentencing court must make its findings under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate them into the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. The trial court is not required to state the reasons behind its findings related to consecutive sentences, however. *Id.* Thus, the trial court's "mere regurgitation" of the statute is sufficient to support the imposition of consecutive sentences. *State v. Braswell*, 6th Dist. Lucas No. L-16-1197, 2018-Ohio-3208, ¶ 40, citing *State v. Ault*, 6th Dist. Ottawa No. OT-13-037, 2015-Ohio-556, ¶ 12.

{¶ 25} The transcript of Taft's sentencing hearing shows that the trial court made the findings required by R.C. 2929.14(C)(4):

The Court is going to find that consecutive sentences here are necessary to protect the public from future crimes and to adequately punish the offender in this case.

The Court finds consecutive sentences are not disproportionate to the seriousness of his conduct nor to the danger that he poses to the public, and here, at least two of the multiple offenses were committed as part of one or

9.

more courses of conduct, and the harm that was caused by those multiple

offenses was so great no single prison sentence for any of the offenses

caused would adequately reflect the seriousness of his conduct.

The court also included its R.C. 2929.14(C)(4) findings in the sentencing entry. This is all that was required for the trial court to impose consecutive sentences. *See Bonnell* at syllabus; *State v. Nierman*, 6th Dist. Ottawa No. OT-15-020, 2017-Ohio-672, ¶ 15. We conclude, therefore, that the imposition of consecutive sentences was not clearly and convincingly contrary to law.

{¶ 26} Moreover, Taft has not shown that the record clearly and convincingly fails to support consecutive sentences. Although Taft complains that there is no evidence of "great or unusual" harm, the trial court determined that Taft was L.H.'s foster parent, his position as a foster parent allowed him to commit the offenses, he committed multiple offenses against L.H. over a period of time, he impregnated L.H. with a child whom she will have to raise alone, and he continued to deny his "responsibilities" until the DNA test proved that he fathered L.H.'s child. This is sufficient to support a finding under R.C. 2929.14(C)(4)(b) that the harm caused by Taft's offenses was "so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct." *See, e.g., State v. Jones*, 8th Dist. Cuyahoga No. 105527, 2017-Ohio-9020, ¶ 8 (record supported finding of great or unusual harm when the victim was underage and appellant was one of the victim's caregivers, abused the victim over a prolonged period of time, and fathered two children with the victim).

10.

{¶ 27} Because the trial court made the findings required by R.C. 2929.14(C)(4) and Taft has failed to show by clear and convincing evidence that the trial court's findings are not supported by the record, we find that the trial court properly imposed consecutive sentences.

**2. The Trial Court Properly Imposed Maximum Sentences**

{¶ 28} Taft also argues that the trial court improperly imposed maximum sentences for three separate reasons. He argues that the trial court (a) did not make certain findings before imposing maximum sentences, (b) improperly used an element of the offense as an aggravating factor, and (c) allegedly violated his constitutional right to remain silent by using his silence as a basis for imposing maximum sentences. We find each of these arguments unpersuasive.

*(a). The Trial Court was not Required to Make Factual Findings*

{¶ 29} Taft's claim that the trial court was required to make certain factual findings before imposing maximum sentences is flatly incorrect. He cites cases interpreting a version of R.C. 2929.14 that was ruled unconstitutional by the Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Since *Foster*, trial courts have "'full discretion to impose a prison sentence within the statutory range,'" up to and including the maximum sentence for a given crime. *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 at ¶ 13, quoting *Foster* at ¶ 100. And although the Ohio legislature reenacted portions of R.C. 2929.14 that the Supreme Court excised in *Foster*, *Marcum* at ¶ 15, the requirement that the trial court make

11.

specific findings before imposing maximum sentences was not one of them. *State v. Kubat*, 6th Dist. Sandusky No. 17 CAS 0012, 2018-Ohio-3088, ¶ 18. So, under the applicable version of R.C. 2929.14, a trial court is not required to make any special findings before imposing maximum sentences. *Id.* Thus, the trial court's failure to make such findings was not error.

*(b). The Trial Court did not Improperly Consider an Element of the Offense*

{¶ 30} Taft also relies on pre-*Foster* cases to argue that the trial court cannot use an element of the offense as a basis for imposing maximum sentences. He cites a single post-*Foster* case—*State v. Stroud*, 7th Dist. Mahoning No. 07 MA 91, 2008-Ohio-3187—that is distinguishable.

{¶ 31} In *Stroud*, the Seventh District Court of Appeals reversed the defendant's sentence for voluntary manslaughter when the *only* reason the trial court gave for imposing a maximum sentence was that the defendant caused the victim's death—which was one of the elements of the crime—*and* "the trial court did not explain why that fact was more than simply an element of the offense." *Id.* at ¶ 2. In contrast, as discussed more fully below, the trial court here relied on more than Taft "having a relationship with his foster child" (i.e., Taft engaging in sexual conduct with L.H. while he was her "guardian, custodian, or person in loco parentis * * *," as prohibited by R.C. 2907.03(A)(5)) when it crafted Taft's sentence. Moreover—and most importantly—we reiterate that the trial court *was not required* to make any special findings before imposing maximum sentences. *Kubat* at ¶ 18.

12.

*(c). The Trial Court did not Penalize Taft for Remaining Silent*

**{¶ 32}** We have reviewed the record, and we find that the trial court did not penalize Taft for exercising his constitutional right to remain silent when it imposed maximum sentences.

**{¶ 33}** Generally speaking, a defendant's right against self-incrimination under the Fifth Amendment to the U.S. Constitution and Ohio Constitution, Article I, Section 10, survives sentencing, and a trial court may not draw an adverse inference from the defendant's silence. *State v. Dahms*, 6th Dist. Sandusky No. S-11-028, 2012-Ohio-3181, ¶ 9, citing *Mitchell v. United States*, 526 U.S. 314, 321, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). However, because lack of remorse is a sentencing factor under R.C. 2929.12, "even where a defendant does not speak at sentencing, the court's statement that the defendant demonstrated a lack of remorse and an unwillingness to take responsibility, does not demonstrate that a court's sentencing decision is based upon the silence but shows only that the court was considering the statutory sentencing factors." *State v. Hodges*, 8th Dist. Cuyahoga No. 101145, 2014-Ohio-4690, ¶ 11, citing *State v. Clunen*, 7th Dist. Columbiana No. 12 CO 30, 2013-Ohio-5525, ¶ 21, and *State v. Moore*, 11th Dist. Geauga No. 2011-G-3027, 2012-Ohio-3885, ¶ 47. Put another way, a trial court does not violate a defendant's right against self-incrimination when it notes that the defendant's silence shows a lack of remorse or an unwillingness to take responsibility for the crime because it is not using the silence "to draw adverse inferences about the circumstances of the crime in order to punish [the defendant] more severely." *See State v. Duhl*, 2d Dist. Champaign No. 2016-CA-30, 2017-Ohio-5492, ¶ 31.

13.

**{¶ 34}** Here, the trial court cited Taft's silence and refusal to acknowledge his wrongdoing as evidence that Taft did not have genuine remorse. This was a proper consideration for sentencing under R.C. 2929.12 and did not violate Taft's constitutional rights.

### 3. The Trial Court did not "Ignore" Mitigating Evidence

**{¶ 35}** Taft argues that the trial court failed to comply with R.C. 2929.12 because it supposedly "ignored" mitigating evidence presented at the sentencing hearing— specifically, evidence that L.H. induced or facilitated the offense by "emotionally seduc[ing]" Taft.

**{¶ 36}** Under R.C. 2929.12, the trial court has discretion to determine the most effective way to comply with the principles and purposes of sentencing in R.C. 2929.11. The statute lists general factors that the trial court must consider relating to the seriousness of the offender's conduct, the likelihood of recidivism, and, if applicable, the offender's service in the U.S. armed forces. The statute also permits the court to "consider any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A). "A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12." *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, 960 N.E.2d 1042, ¶ 18 (6th Dist.).

**{¶ 37}** A sentencing court is "not obligated to give a detailed explanation of how it algebraically applied each seriousness and recidivism factor to the offender." *Id.* at ¶ 11. In fact, no specific recitation is required; merely stating that the court considered the statutory factors is sufficient. *Id.* Further, the trial court is not required to give any

14.

particular weight or emphasis to any factor; it is merely required to consider the statutory factors. *State v. Burnette*, 6th Dist. Lucas Nos. L-16-1272 and L-16-1273, 2017-Ohio-8424, ¶ 36. And the trial court's failure to discuss a particular factor does not mean that the court did not consider that factor. *Id.*

{¶ 38} Here, the record makes clear that the trial court considered all applicable seriousness and recidivism factors in R.C. 2929.12. At the sentencing hearing, the trial court reviewed the factors in R.C. 2929.12 that it found applicable to Taft. In doing so, the court specifically determined that none of the "less serious" factors in R.C. 2929.12(C)—including that the victim induced or facilitated the offense—applied. Rather than indicating that the trial court failed to consider the statements from Tamie and Dr. Barns about how L.H. "seduced" Taft, the court's statement indicates that it chose to give those statements no mitigating weight. That is, the court did not ignore the statements; it took them into account and was not persuaded that the statements showed that L.H.'s alleged behavior induced Taft to commit sexual battery against L.H. or facilitated his commission of the crimes.

{¶ 39} Additionally, the court noted in the sentencing entry that it considered the seriousness and recidivism factors in R.C. 2929.12 and listed the specific factors that it found applicable to Taft. The trial court's statements at the hearing and in the sentencing entry demonstrate that the trial court considered R.C. 2929.12 as required. *State v. Torres*, 6th Dist. Ottawa No. OT-18-008, 2019-Ohio-434, ¶ 13. We find that Taft has not shown that the trial court erred in considering the seriousness and recidivism factors in this case.

15.

### 4. The Trial Court was not Required to Impose the Statutory Minimum Sentence

{¶ 40} In Taft's final argument against his sentence, he contends that the trial court ignored the directive in R.C. 2929.11 to use the minimum sanctions available in punishing an offender.

{¶ 41} Under R.C. 2929.11(A), the purposes of felony sentencing are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." To achieve these purposes, the sentencing court must consider "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* The sentence imposed shall be reasonably calculated to achieve the overriding purposes, "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 42} "[C]onsideration of the appropriate factors set forth in R.C. 2929.11 can be presumed unless the defendant affirmatively shows to the contrary." *State v. Clinton*, 135 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 243. And although the statute requires the trial court to impose "the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources," this does not mean that the court must impose the statutory minimum sentence. *Torres* at ¶ 18. To the contrary, "the trial court ha[s] full discretion to impose

16.

any sentence within the authorized statutory range * * *." *State v. Connors*, 2d Dist. Montgomery No. 26721, 2016-Ohio-3195, ¶ 6.

{¶ 43} The record also makes clear that the trial court considered R.C. 2929.11. The trial court explicitly stated at the sentencing hearing and in the sentencing entry that it considered the principles and purposes of sentencing in R.C. 2929.11. This is all that is necessary to show that the trial court considered R.C. 2929.11 as required. *Torres* at ¶ 13.

{¶ 44} Moreover, although it was not required to give the reasons behind its sentence, *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus, the trial court explained to Taft that it found his crimes particularly troubling because of

> the position that you were in, the repeated nature of the activities here, the fact that you were a foster parent, the fact that it resulted in the birth of a child, [and] the fact you continued to deny your responsibilities up until you were forced to face them based on the DNA test * * *.

{¶ 45} To contradict the trial court's findings, Taft points to his low score on the recidivism assessment that he took during the presentence investigation and Dr. Barns's opinion that he is not a threat to the community. The trial court, however, apparently did not find that these facts outweighed the seriousness of Taft's crimes. Given the fostering relationship between Taft and L.H., the ongoing nature of the sexual abuse, L.H.'s pregnancy, and Taft's reluctance to accept responsibility for his actions until a DNA test proved the child's paternity, we find no error in the trial court's conclusion.

{¶ 46} In sum, we find that Taft has failed to show that the trial court did not comply with R.C. 2929.14(C)(4), that his sentence is clearly and convincingly contrary to law as required by R.C. 2953.08(G)(2)(b), or that his sentence is clearly and convincingly unsupported by the record. Accordingly, we find that Taft's first assignment of error is not well-taken.

### B. Taft's Trial Counsel Provided Effective Representation

{¶ 47} In his second assignment of error, Taft argues that his trial counsel was ineffective because counsel did not submit mitigating evidence (in addition to the statements from Tamie, Dr. Barns, and Taft) at the sentencing hearing. The state counters that the failure to present mitigating evidence at the sentencing hearing is insufficient, without more, to prove that trial counsel was ineffective.

{¶ 48} To establish ineffective assistance of counsel, the appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002), quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 49} Properly licensed Ohio lawyers are presumed to be competent, *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62, and there are "countless" ways for an attorney to provide effective assistance in a case, so "'[j]udicial

18.

scrutiny of counsel's performance must be highly deferential.'" *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689. To that end, counsel is "strongly presumed" to have rendered adequate assistance and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985), quoting *Strickland* at 694-695.

{¶ 50} "[C]ounsel's decision not to present mitigating evidence during sentencing can be considered sound trial strategy based upon the totality of the circumstances." *State v. Stan*, 7th Dist. Belmont No. 16 BE 0029, 2017-Ohio-7756, ¶ 20; *State v. Harris*, 6th Dist. Erie No. E-18-013, 2019-Ohio-813, ¶ 11. Generally, trial strategy and tactical decisions—even debatable ones—cannot form the basis of a claim of ineffective assistance of counsel. *State v. Grissom*, 6th Dist. Erie No. E-08-008, 2009-Ohio-2603, ¶ 22.

{¶ 51} Here, we presume that Taft's trial counsel's failure to present certain mitigating evidence at sentencing was sound trial strategy, and Taft does not point to anything in the record that indicates otherwise. Moreover, based on the evidence in the record and the trial court's characterization of Taft's crimes, his argument that he would have received a lesser sentence if trial counsel had proceeded with Taft's proposed victim-blaming strategy is speculative at best. And such speculative claims do not support a finding of ineffective assistance. *See State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 104. We find, therefore, that Taft's second assignment of error is not well-taken.

19.

## C. The Trial Court Properly Considered the Victim's Statement

**{¶ 52}** In his third assignment of error, Taft claims that he was denied his due process right to cross-examine L.H. during the sentencing hearing because the trial court improperly allowed someone else to read L.H.'s hearsay statements, which included statements regarding additional criminal conduct by Taft. The state contends that the trial court's admission of L.H.'s statement was not prejudicial because the Rules of Evidence do not apply to sentencing hearings, the trial court was statutorily required to consider a victim impact statement, Taft did not have a right to cross-examine L.H., and dismissed charges can be considered at sentencing.

**{¶ 53}** The victim of a crime has a right under R.C. 2930.14(A) to make a statement to the court prior to it imposing sentence on the defendant. The victim is permitted to present her statement to the court through a representative—who can be any person the victim designates—and the designated representative "may exercise the rights of the victim * * *." R.C. 2930.02(A); R.C. 2929.19(A). If the victim chooses to make a statement at sentencing, the trial court is required to consider the statement along with all other sentencing considerations. R.C. 2930.14(B); R.C. 2929.19(B)(1).

**{¶ 54}** Although R.C. 2929.19(A) requires that a statement "present information relevant to the imposition of sentence in the case," R.C. 2930.14 "does not expressly limit the content of the victim-impact statement—it only sets forth what the court is required to consider. Other information is not forbidden by statute." *State v. Brown*, 146 Ohio App.3d 654, 660, 767 N.E.2d 1192 (1st Dist.2001). Relevant information can include facts relating to charges in the same case that were dismissed because "evidence of a

20.

charge dismissed pursuant to a plea agreement is a permissible sentencing consideration unless otherwise provided in the agreement." *State v. Ratcliffe*, 6th Dist. Wood No. WD-18-002, 2019-Ohio-308, ¶ 21, citing *State v. Lewis*, 6th Dist. Wood No. WD-14-082, 2015-Ohio-4629, ¶ 7.

**{¶ 55}** Our review of the sentencing hearing shows that the trial court properly allowed L.H.'s "big sister" from a youth outreach program—whom L.H. designated as her representative—to read the letter that L.H. wrote. L.H. had the right to make a statement at sentencing and was statutorily permitted to designate someone else to speak to the court on her behalf. Furthermore, the content of L.H.'s statement was proper because her descriptions of Taft raping and impregnating her were related to the five rape charges that the state dismissed in exchange for Taft's guilty pleas, and nothing in the plea agreement prevented the court from considering the dismissed rape charges at sentencing. Accordingly, we find no error in the trial court considering L.H.'s statement.

**{¶ 56}** Taft's third assignment of error is not well-taken.

### D. Taft did not Appeal the Trial Court's Decision on Postconviction Relief

**{¶ 57}** Finally, in Taft's fourth assignment of error, he argues that on June 1, 2018, the trial court improperly denied his petition for postconviction relief without holding a hearing.

**{¶ 58}** A trial court's decision granting or denying a petition for postconviction relief is a final, appealable order. R.C. 2953.23(B). Under App.R. 3(A) and 4(A), a party wishing to appeal a judgment must file a notice of appeal within 30 days of the date on which the judgment was entered. An appellate court does not have jurisdiction to

21.

consider the issues raised on appeal if the party fails to properly file a notice of appeal. *State ex rel. Pendell v. Adams Cty. Bd. of Elections*, 40 Ohio St.3d 58, 60, 531 N.E.2d 713 (1988).

{¶ 59} Taft did not file a notice of appeal of the trial court's postconviction decision. Consequently, we do not have jurisdiction to consider the issues he raises regarding the trial court's denial of his petition for postconviction relief. We find that Taft's fourth assignment of error is not well-taken.

### III. Conclusion

{¶ 60} Based on the foregoing, the April 20, 2018 judgment of the Huron County Court of Common Pleas is affirmed. Taft is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.