[Cite as *State v. Aquilar*, 2021-Ohio-841.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109283 |
| v. | : | |
| RAFAEL AQUILAR, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 18, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-640603-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Denise J. Salerno, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Rafael Aquilar appeals from the judgment of the Cuyahoga County Court of Common Pleas sentencing him to an aggregate nine-year prison sentence after he pleaded guilty to six sex offenses involving two children.

The court ordered Aquilar to serve two of the sentences consecutively and it is that aspect of his sentence which he challenges on appeal. We affirm.

**Assignment of Error**

{¶ 2} Aquilar raises one assignment of error:

The trial court's consecutive sentencing of Mr. Aquilar was clearly and convincingly not supported by the record where Mr. Aquilar was a first time criminal offender brought to court at the age of 45 with no other convictions of any kind, nor any indication in the record that he was a risk to re-offend.

**Background**

{¶ 3} Aquilar was indicted on nine felony counts involving the sexual abuse of two children over the course of approximately five years. He pleaded guilty to six counts: one count of attempted rape, a second-degree felony, four counts of gross sexual imposition, all third-degree felonies and one count of disseminating matter harmful to juveniles, a fourth-degree felony.

{¶ 4} The trial court imposed a seven-year term for the attempted rape count to be served consecutively to a two-year term for one gross sexual imposition count. The court imposed lesser and concurrent terms for the remaining four counts that subsumed into the larger sentence.

{¶ 5} Eight of the nine counts of the indictment and five of the six counts to which Aquilar pleaded guilty, i.e., all but one count of gross sexual imposition, involved the same victim, M.P. (d.o.b. 5/9/03). The crimes committed against her began when she was approximately five years of age. The remaining count to which

Aquilar pleaded guilty involved M.P.'s younger sister B.P. (d.o.b. 11/27/07) and occurred when B.P. was approximately five years of age.

{¶ 6} Aquilar's access to the girls and his ability to perpetrate this abuse stemmed from the relationship between two families. Aquilar's brother and his brother's family were very close with the victims' family. Both families came from Mexico and shared the same culture. They relied on each other. Their young children were friends. M.P. would ride to school with the brother's family.

{¶ 7} Aquilar regularly visited his brother. It was through these visits that Aquilar was able to gain the trust of the family and access to M.P. and B.P. All of the children liked Aquilar. He took them shopping. At sentencing, the victims' father explained, "[t]his person [Aquilar] looked of good feelings and sincere. I never imagined that he could hurt my daughter and did the same with my second daughter, [B.P.], also abusing her."

{¶ 8} Nevertheless, Aquilar groomed M.P. and as he preyed on her the abuse intensified. What began as Aquilar touching M.P. over her clothing escalated into him forcing her to touch his penis, forcibly removing her clothes, and attempting to penetrate her. He showed her pornography while he touched her breasts and vagina and forced her to touch his penis. Aquilar made this abuse a precondition for rewards and nice things that M.P. and the other children wanted e.g., taking them to McDonald's.

{¶ 9} M.P. recalled an incident where she went to the other family's house and only Aquilar was home. Aquilar encouraged her to stay until the family returned

but she wanted to leave. Aquilar grabbed her by the arm and pulled her into a bathroom. He touched her over and under her clothing and kissed her on the mouth. She tried to leave. Aquilar chased her, pulled his pants down and tried to vaginally penetrate her.

{¶ 10} B.P. also related an incident where Aquilar took her into a garage near a pool table. He pulled at her clothing and touched her body, over and under, her clothing.

{¶ 11} The abuse appears to have continued until Aquilar moved out of the area and no longer had access to the victims.

{¶ 12} At the sentencing hearing both girls, as well as their parents, addressed the court and discussed the extent of the abuse as well as the lasting impact it has had on them individually as well as collectively as a family. Both victims suffer psychological trauma from the abuse.

{¶ 13} M.P. read from a statement that she prepared explaining how the abuse affected her:

> I feel like the whole situation affected the way I view men. I feel like when it comes to grown me, they're just all the same. My childhood was not how I wanted it to be.

The prosecutor continued to read from M.P.'s statement:

> I've been thinking about everything that happened to me in the past and it's been on and off my mind at random hours. I can be in a good mood and, once I think about it, I just stay in those thoughts. The things you did disgust me, especially the fact that you did it to my younger sister [B.P.].

B.P. discussed how the abuse impacted her:

Whenever I think about it, my mood changes.  When I leave my room I act normal because I don't want anybody to know why I'm upset.  I also feel different about men.  When I see men around me I feel nervous and not safe.

{¶ 14} Aquilar addressed the court and victims at sentencing.  He asked for forgiveness.  Aquilar admitted he "made mistakes" and said that he accepted responsibility for them.  He asked the court to "find it in your heart to give me a reasonable sentence so that I can then go on with my life."

{¶ 15} As the trial court did not order a presentence investigation report following advisement from Aquilar's counsel as to his immigration status,[1] there is no indication of a criminal record.  The court explained that "[it] would not have been beneficial or helpful because there's not much we could have learned."

{¶ 16} The court was made aware that Aquilar was currently an undocumented immigrant and was in the country illegally and, moreover, that he had twice been deported and reentered the country after each deportation, apparently using an alias.  Moreover, his counsel indicated that following release from prison Aquilar would face deportation again.

{¶ 17} The trial court addressed what it did know about Aquilar's criminal history:

But what I look at is, and I asked about it, your deportation two times. I think that just shows a disregard for the law that you were deported here twice.  And that is something that weighs heavily on me.

---

[1] In lieu of a presentence investigation report the court permitted Aquilar and the state to submit sentencing memoranda for consideration.

**{¶ 18}** The court also observed that the harm Aquilar caused M.P. and B.P. was "lifelong." The court emphasized that Aquilar's relationship with the victims facilitated his crimes against them:

> The fact that you had access to these children for one reason and that's because your brother lived next-door, they were friends with your brother's children, they would go over to that house. Their parents knew your brother, they met you and you, according to the father, seemed like a nice guy, a trustworthy guy. They gave you access to their child, or children, because they trusted that you would take care of them. * * * You violated that trust.

**{¶ 19}** The court ordered that Aquilar serve the two-year term imposed on the gross sexual imposition count pertaining to B.P. consecutive to the seven-year term imposed on his attempted rape of M.P., finding:

> I believe that the consecutive sentence is necessary to protect and punish and it's not disproportionate. And I find that the crime is so great or unusual that a single term does not adequately reflect the seriousness of your conduct.

**Analysis**

**{¶ 20}** Aquilar does not dispute that the trial court made the requisite statutory findings before imposing consecutive sentences.[2] On appeal, he contends that the record does not support those findings.

---

[2] Although Aquilar does not dispute that the trial court made the requisite findings we nevertheless observe that in making those findings the court need not recite the statutory language verbatim. *State v. Wilkins*, 8th Dist. Cuyahoga No. 109368, 2021-Ohio-311, ¶ 12, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 12 ("'[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.'").

{¶ 21} To impose consecutive sentences, a trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 22} The trial court must make the requisite findings in support of the imposition of consecutive sentences at the sentencing hearing and incorporate those findings into its sentencing journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. In so doing, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Bonnell* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and

can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29. When considering whether the trial court has made the requisite findings, an appellate court must view the trial court's statements on the record "in their entirety." *See, e.g.*, *State v. Blevins*, 2017-Ohio-4444, 93 N.E.3d 246, ¶ 23, 25 (8th Dist.).

{¶ 23} There are two ways a defendant can challenge consecutive sentences on appeal. *State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 15. First, the defendant can argue that consecutive sentences are contrary to law because the trial court failed to make the required R.C. 2929.14(C)(4) findings. *See* R.C. 2953.08(G)(2)(b). Second, the defendant can argue that the record clearly and convincingly does not support the findings made by the trial court under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a).

{¶ 24} Aquilar asserts that there was no basis in the record by which the trial court could have concluded "that the public at large needed protecting from [him]," that the consecutive sentence was "necessary to punish [him]" or that "he would be inclined to commit such crimes again." In framing his argument as such, however, Aquilar misapprehends the limited scope of our review. As this court has previously explained:

> [T]he clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

*State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453 (8th Dist.). As directed by R.C. 2953.08(G)(2), "the appellate court's standard of review is not whether the sentencing court abused its discretion," let alone a de novo review of whether consecutive sentences were warranted in the first place. Rather, we are confined to determining whether the record clearly and convincingly does not support the trial court's consecutive sentence findings. R.C. 2953.08(G)(2). "'Clear and convincing evidence is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Franklin*, 8th Dist. Cuyahoga No. 107482, 2019-Ohio-3760, ¶ 29, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 25} Here, we do not find that the record clearly and convincingly does not support consecutive sentences. To the contrary, as discussed above, we find ample support underlying the court's consecutive sentence findings. As stated, the court emphasized the circumstances surrounding the abuse that it found particularly striking. Aquilar was a known and trusted person to the victims and their family. He exploited that relationship to prey upon the girls and perpetrate the abuse. Moreover, both girls were five years old at the time of the abuse, although Aquilar continued to abuse M.P. for many years. The victims and their family further detailed the harm that Aquilar has caused them, including how it continues to do so to this day. The court described it as "lifelong." Moreover, the record indicates that

the abuse stopped only after Aquilar moved out of the area and the victims were no longer available to him.

{¶ 26} Nevertheless, Aquilar claims, in the absence of any support in the record, that he has no criminal history and that he presents no risk of recidivism. In so doing, he argues this case is similar to *State v. Regalo*, 8th Dist. Cuyahoga No. 108430, 2020-Ohio-917, a case that also involved sexual crimes against children, in which this court vacated an order of consecutive sentences. In *Regalo*, we found no support in the record for the trial court's finding that consecutive sentences were necessary to protect the public from future crime and were not disproportionate the danger the defendant posed to the public. *Id.* at ¶ 18-19. In that case, the record affirmatively demonstrated by way of a presentence investigation report that, aside from some traffic convictions, the defendant had "no criminal record" and further was found to be a low recidivism risk. *Id.* at ¶ 19.

{¶ 27} We find that *Regalo* is distinguishable. Here, there was no presentence investigation report and the record is otherwise devoid of any indication that consecutive sentences were not required to protect the public from future crime and were not disproportionate to the danger Aquilar poses to the public. Regardless of whether Aquilar's full criminal history was known to the court, what is clear is that at sentencing, as well as at the time of the offenses, Aquilar did not have legal status in this country. Moreover, he had been deported from the country twice in the past. As to recidivism, Aquilar was never determined to be a low risk. To the contrary, the fact is that he perpetrated the abuse for approximately

five years and that it stopped only after he moved out of the area seem to indicate the opposite. Simply put, and unlike *Regalo*, in this case we do not clearly and convincingly find that the record fails to support the trial court's findings that the consecutive sentence was necessary to protect the public from future crime and was not disproportionate to the danger Aquilar poses to the public.

{¶ 28} We overrule the assignment of error.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
LARRY A. JONES, SR., J., CONCUR