[Cite as *State v. Hervey*, 2022-Ohio-1498.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,        :

                                      No. 110775

    v.                         :

MICHAEL P. HERVEY,                      :

    Defendant-Appellant.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED IN PART AND REMANDED
**RELEASED AND JOURNALIZED:** May 5, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-655505-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Debora Brewer and Jeffrey Schnatter, Assistant Prosecuting Attorneys, *for appellee*.

Milton and Charlotte Kramer Law Clinic, Case Western Reserve University School of Law, Andrew S. Pollis, Supervising Attorney, and Joshua Knauf and Megan Moro, Certified Legal Interns, *for appellant*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Michael Hervey appeals his consecutive sentences after he pled guilty to four counts of gross sexual imposition. Hervey contends that his consecutive sentences should be vacated because (1) the trial court failed to make

all of the requisite findings for the imposition of consecutive sentences under R.C. 2929.14(C)(4) and (2) the record does not support the imposition of consecutive sentences. Because we find that the trial court failed to make the complete proportionality finding required for the imposition of consecutive sentences at the sentencing hearing, we vacate Hervey's consecutive sentences and remand for resentencing.

**Factual Background and Procedural History**

{¶ 2} On January 6, 2021, a Cuyahoga County Grand Jury indicted Hervey on 14 counts of gross sexual imposition. The charges related to Hervey's alleged sexual abuse of his then-girlfriend's minor daughters, Jane Doe I and Jane Doe II, during the time period January 1, 2000, to December 31, 2002 ("Jane Doe I") and May 9, 1996, to May 9, 1998 and May 9, 2005, to May 8, 2009 ("Jane Doe II").

{¶ 3} The parties reached a plea agreement. On August 12, 2021, Hervey pled guilty to four counts of gross sexual imposition in violation of R.C. 2907.05(A)(1) (Counts 2, 5, 9 and 12), fourth-degree felonies,[1] and the remaining counts were nolled. As part of the plea agreement, the parties stipulated that all counts were non-allied offenses, that Hervey would have no contact with the victims and that his guilty pleas would render Hervey a sexually oriented offender under Megan's Law.

---

[1] The two counts to which Hervey pled guilty relating to Jane Doe II, Counts 9 and 12, were amended to reflect a date range of May 9, 2005, to December 31, 2007.

The trial did not order a presentence-investigation report ("PSI") prior to sentencing.[2]

{¶ 4} The sentencing hearing was held on August 19, 2021. At the outset of the sentencing hearing, the trial court indicated that it had previously reviewed Hervey's sentencing memorandum, victim-impact statements from Jane Doe I and Jane Doe II and relevant records from the Cuyahoga County Division of Children and Family Services. Jane Doe I, the state, defense counsel and Hervey addressed the trial court at the sentencing hearing.

{¶ 5} Jane Doe I read her victim-impact statement. She described the "pattern of abuse" she had endured beginning when she was 12 years old, the effect

---

[2] Hervey argues in his appellate briefs that the trial court sentenced him "without affording him the benefit of a [PSI] or time to procure other evidence that would have demonstrated that he posed no risk of reoffending." The record reflects that, at the conclusion of the change-of-plea hearing, defense counsel initially requested a PSI. The trial court questioned whether a PSI was necessary, noting that it was taking "four to six weeks to get a PSI." The trial court indicated that that it had already reviewed the records it had in the case, that it would prefer to move the case along "sooner rather than later," and that if Hervey had other mitigation evidence he wished to present, the trial court "would be more than happy to consider all of it." The trial court then asked, "Is that all right?" Defense counsel responded: "That's fine. A PSI's not — we do have other mitigation things we want to present, but it doesn't necessarily need to be through a PSI."

Hervey did not request a continuance or otherwise claim, prior to the sentencing hearing, that he needed additional time to gather mitigation evidence. It was not until the middle of the sentencing hearing, after Jane Doe I and the state had addressed the trial court, that defense counsel requested an opportunity to obtain a risk assessment for Hervey prior to sentencing to "give the [c]ourt an indication as far as his likelihood to reoffend as part of our mitigation." Defense counsel stated that they had intended to "get a risk assessment * * * as part of our mitigation" but "didn't have time from the plea to the sentencing." The trial court denied the request, stating that it did not believe such an assessment was "necessary" because the trial court would "accept what [Hervey's] attorney is saying" and would "accept the fact that on paper the statutory sentencing factors in [R.C.] 2929.12 would indicate that [Hervey] is unlikely to reoffend." Because Hervey has not raised the trial court's denial of this request as an assignment of error in this appeal, we do not further consider the issue here.

of Hervey's abuse on her sense of self-worth and relationships with others, the guilt she felt for not coming forward sooner to protect her younger sister from Hervey and the years of therapy she underwent to learn how to recover from what Hervey did to her. She described Hervey as a "monster" and a "danger to society" and requested that he be sentenced "to the fullest extent of the law."

{¶ 6} The state read Jane Doe II's victim-impact statement. In her victim-impact statement, Jane Doe II detailed specific instances of sexual abuse and other inappropriate behavior by Hervey towards her. She stated that Hervey's conduct first began making her uncomfortable when she was five or six years old and that the sexual abuse started when she was 14 and continued until she moved out at age 17. The state argued that although the offenses were fourth-degree felonies, they were sex offenses involving a "pattern of abuse" against two young victims and, therefore, "warrant[ed] a prison sentence for Mr. Hervey." The state "defer[red] to the [c]ourt" as to "the amount of time that he should serve."

{¶ 7} Defense counsel requested that the trial court consider community control sanctions and argued that Hervey could be "maintained safely in the community." Defense counsel stated that Hervey had been "heavily abusing drugs, ecstasy, meth" and alcohol during the time the conduct at issue occurred and that "once he realized * * * how out of control his behavior was," Hervey "took it upon himself to stop abusing and maintain his sobriety." Defense counsel asserted that Hervey had "taken responsibility for his behavior," had maintained his sobriety for ten years and had "expressed extreme remorse with regard to this case." Defense

counsel further asserted that Hervey had stable housing and stable employment as a concierge/security officer for a condominium complex, that Hervey's mother relied on him for her care, that Hervey had no prior felony convictions and that there had been no indication that Hervey had committed any crimes or engaged in "any other incidents that would be concerning to the Court" in the past ten years.

{¶ 8} Hervey also addressed the trial court. He stated that he was "really sorry" for his actions but that he "really didn't know" what he was doing at the time he was abusing his victims because his "brain was really messed up" due to his heavy drug use. The trial court questioned Hervey at length regarding the extent to which he knew what he was doing when he abused the girls. Hervey claimed that he only "very vaguely" remembered "some" of the multiple incidents of abuse. Hervey stated that, "[a]fter the fact" when he was told what he had done, he was "absolutely mortified," but acknowledged that he "did it again" "[w]hen [he] was high." Harvey told the trial court that he had been sober "for a long time now" and "never meant to affect [the victims] negatively in any way."

{¶ 9} Prior to sentencing Hervey, the trial court discussed the principles and purposes of felony sentencing and explained its evaluation of the recidivism and seriousness factors that led to its decision to impose a prison sentence in this case. The trial court explained:

> [D]etermining how to sentence on a felony is directed by statute. Here's what the statute says:
>
> > In imposing a sentence on a felony, you have to protect the public from future crime by you, okay? I have to punish, okay? That's the

punitive piece of it, and use resources in as economically-feasible way as possible, striving to do the least-restrictive sentence. * * *

I'm required to consider if you are likely or unlikely to reoffend. * * * I'll accept what your attorney is saying. I'll accept the factors that would indicate that you are likely to reoffend or unlikely to reoffend.

You don't have a criminal history. I understand that. However, this went on for years and years. So while you never got charged with it or caught, had you been, you could have had charges for a long time, but there's no other charges elsewhere.

That is a statutory factor. Therefore, I can't consider whether you have ever violated probation or parole and, in listening to your attorney, I understand that you have reported as required and tested negative.

You have expressed remorse, took responsibility, said you didn't know what you were doing; but in the midst of all of this, you tell me that you were doing this because you were using drugs, which made you behave in a different way, and you continued to use drugs and victimize.

So, I mean, that's on you. * * * Those are voluntary decisions. * * * I'll accept every factor that your attorney is arguing that would indicate statutorily against you reoffending, but this went on for years and years and it is multiple victims. * * *

I have to consider the seriousness of your conduct, and that's where you fail, because the factors that indicate that your conduct is more serious than conduct that ordinarily constitutes the offense statutorily include that the harm caused by you was exacerbated and felt more by the victims because of their tender age and the fact that you did indeed cause harm. You caused harm. We heard it. You know that.

Messing around with little girls, and you have a relationship with them, a position of trust that you breached. You were the person who should have made sure nobody ever did that to them, and it was that relationship that facilitated your unlawful assaultive behavior. * * *

But when it comes to the seriousness factors, sir, there's nothing that renders your conduct less serious. Nothing. These were children that regarded you as their father.

You were in a position of trust. You can only imagine at that age with their inexperience, you introduced them into a world of intimacy that was so flawed and corrupt and that shaped their world view and hurt them. * * * I don't see where you overcome a prison term. * * *

Listening to everything, considering the statutory sentencing factors, the harm is so great that despite the fact that you will be a registered sex offender, I don't believe that that satisfies the punitive aspect that is intended to be included in a sentence here, and I do believe that community control sanctions would demean the seriousness of your conduct.

{¶ 10} The trial court questioned Hervey's repeated attempts to blame his drug use for his abuse of the girls and noted that Hervey's drug use was a "voluntary decision," i.e., "[n]obody is making you take drugs." The trial court further stated:

It seems unfathomable, unfathomable that somebody had to bring this to your attention, that you didn't know what you were doing engaging in this long pattern of abusing these kids. You're not helping yourself by standing here and saying I take responsibility, somebody told me about it. It just seems so far-fetched and ridiculous, despite the fact that I understand you were using drugs heavily.

{¶ 11} The trial court sentenced Hervey to one year in prison on each of the four counts, with the sentences on Counts 2 and 5 to run concurrently to each other but consecutively to the sentences on Counts 9 and 12, and the sentences on Counts 9 and 12 to run concurrently to each other but consecutively to the sentences on Counts 2 and 5 — resulting in an aggregate prison sentence of two years. The trial court also imposed five years of mandatory postrelease control and designated Hervey a sexually oriented offender.

{¶ 12} With respect to its decision to impose consecutive sentences, the trial court stated:

> I'm making these — I'm imposing these consecutive terms pursuant to 2929.14(C). It is necessary to punish, as I mentioned before. That's 2929.14(C)(4), and it is certainly not disproportionate to the seriousness of your conduct, Mr. Hervey.
>
> The history — I'm sorry, at least two of the conducts were committed as a course of conduct. This was a pattern that went on and on, and the harm caused to these two kids was so great that no single prison term would adequately reflect the seriousness of your conduct.
>
> I'm not making the finding that the history of criminal conduct demonstrates consecutive terms are necessary to protect the public, but I will tell you this:
>
> I'm just listening to what [defense counsel] has to say on the recidivism piece. I say this qualifiably [sic]; because when you look at what happened, there are multiple counts over a span of years, but I just want the sentence to be clean and clear and supportive of the consecutive terms. The aggregate is two years.

{¶ 13} The trial court set forth its consecutive sentence findings in its sentencing journal entry as follows:

> The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct.

{¶ 14} Hervey appealed, raising the following sole assignment of error for review:

The trial court erred in imposing consecutive sentences without finding on the record that consecutive sentences were not disproportionate to the danger that Mr. Hervey posed to the public and when the record would not have supported such a finding.

**Law and Analysis**

{¶ 15} Hervey argues that his consecutive sentences should be vacated and modified to concurrent sentences pursuant to R.C. 2953.08(G)(2) because (1) the trial court did not make a finding at the sentencing hearing that consecutive sentences were not disproportionate to the danger he poses to the public and (2) the record "would not have supported such a finding."

{¶ 16} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 21. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and convincingly finds" that (1) the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4) or 2929.20(I) or (2) the sentence is "otherwise contrary to law." "'Clear and convincing evidence is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Franklin*, 8th Dist. Cuyahoga No. 107482, 2019-Ohio-3760, ¶ 29, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. It is "an extremely deferential

standard of review." *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.).

{¶ 17} Under Ohio law, sentences are presumed to run concurrently unless the trial court makes the required findings under R.C. 2929.14(C)(4). *State v. Reindl*, 8th Dist. Cuyahoga Nos. 109806, 109807, and 109808, 2021-Ohio-2586, ¶ 14; *State v. Gohagan*, 8th Dist. Cuyahoga No. 107948, 2019-Ohio-4070, ¶ 28. To impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 18} Thus, a defendant can challenge consecutive sentences on appeal in two ways. First, the defendant can argue that consecutive sentences are contrary to

law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *Reindl* at ¶ 13; *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). Second, the defendant can argue that the record "clearly and convincingly" does not support the court's findings made pursuant to R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Reindl* at ¶ 13.

{¶ 19} Following a careful review of the transcript of the sentencing hearing, we find that the trial court failed to make all of the requisite findings for the imposition of consecutive sentences at the sentencing hearing. To impose consecutive sentences, it is not enough that the record could support each of the findings necessary for the imposition of consecutive sentences; the trial court must actually make each finding required under R.C. 2929.14(C)(4) at the sentencing hearing and then incorporate those findings into its sentencing journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. To make the requisite statutory findings, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Although the trial court is not required to make a "talismanic incantation of the words of the statute," *Bonnell* at ¶ 37, it must be clear from the record that the trial court actually made the findings required by statute. *State v. Tolbert*, 8th Dist. Cuyahoga No. 110249, 2022-Ohio-197, ¶ 43; *State v. Lariche*, 8th Dist. Cuyahoga No. 106106, 2018-Ohio-3581, ¶ 24. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis

and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29. When considering whether the trial court has made the requisite findings, we must view the trial court's statements on the record "in their entirety." *See, e.g., State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 74; *State v. Aquilar*, 8th Dist. Cuyahoga No. 109283, 2021-Ohio-841, ¶ 22; *State v. Blevins*, 2017-Ohio-4444, 93 N.E.3d 246, ¶ 21, 23 (8th Dist.).

{¶ 20} With respect to the proportionality finding, the "essential question" is whether the record of the sentencing hearing "makes it clear" that the court considered both (1) the seriousness of the offender's conduct and (2) the danger the offender poses to the public and "compared those factors to the sentence imposed on the defendant and determined that comparison supported the imposition of the consecutive sentence." *Tolbert* at ¶ 48.

{¶ 21} Following a careful review of the record, we do not discern from the entirety of the trial court's statements at the sentencing hearing that the trial court — either expressly or "using different language" — made the finding that consecutive sentences are not disproportionate to the danger Hervey poses to the public. *Id.* at ¶ 51. It is not clear from the transcript of the sentencing hearing that the trial court considered the danger the offender poses to the public, compared that factor to the sentence imposed on the defendant and determined that that comparison supported the imposition of consecutive sentences. *Id.* at ¶ 48. Indeed, the trial court expressly declined to make a finding at the sentencing hearing that "the history of criminal

conduct demonstrates consecutive terms are necessary to protect the public." Because, based on the record before us, the trial court did not make the full proportionality finding required by R.C. 2929.14(C)(4) at the sentencing hearing, Hervey's consecutive sentences are contrary to law. *Bonnell* at ¶ 36-37; *see also Tolbert* at ¶ 49-50 (trial court did not make proportionality finding under R.C. 2929.14(C)(4) where trial court did not expressly state at the sentencing hearing that consecutive sentences were "'not disproportionate' to either the offense of the [a]ppellant or to the likelihood of the [a]ppellant of reoffending" and none of the trial court's other statements could "be taken as any sort of comparison between the consecutive sentence and the offense or the likelihood that [a]ppellant would reoffend"); *State v. Lewis*, 8th Dist. Cuyahoga No. 107875, 2019-Ohio-3660, ¶ 49-54 (where "the only proportionality finding the trial court made was that a consecutive sentence was 'not disproportionate to the crime that occurred,'" imposition of consecutive sentences did not comply with R.C. 2929.14(C)(4)); *State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 11, 19-21 (consecutive sentences vacated where trial court stated that consecutive sentences were "not disproportionate to what you did in this case" but did not make "the complete proportionality finding required by R.C. 2929.14(C)(4)"); *State v. F. F.*, 8th Dist. Cuyahoga No. 107013, 2019-Ohio-455, ¶ 13-14 (where trial court "made only a passing reference that the sentence is not disproportionate" and did not find that consecutive sentences are not disproportionate to the seriousness of offender's

conduct and to the danger he poses to the public, imposition of consecutive sentences was contrary to law).

{¶ 22} Where, as here, a trial court has imposed consecutive sentences but failed to make all of the requisite statutory findings, the remedy is generally to vacate the consecutive sentences and remand for resentencing. *See, e.g., State v. Beasley*, 153 Ohio St.3d 497, 544, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 260; *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 37; *Tolbert* at ¶ 51-52; *Tidmore* at ¶ 30; *F. F.* at ¶ 14, 16.

{¶ 23} Hervey, however, urges this court not to remand the case and to, instead, modify his sentences from consecutive sentences to concurrent sentences based on the trial court's failure to comply with R.C. 2929.14(C)(4). He contends that this case is indistinguishable from *State v. Regalo*, 8th Dist. Cuyahoga No. 108430, 2020-Ohio-917, and that "[t]here is nothing in this record to demonstrate that Mr. Hervey posed a danger to the public, much less a danger sufficient to warrant the imposition of consecutive service under R.C. 2929.14(C)(4)." We disagree.

{¶ 24} In *Regalo*, the trial court made all of the findings required for the imposition of consecutive sentences under R.C. 2929.14(C)(4); however, this court held that the record clearly and convincingly did not support the trial court's findings that consecutive sentences were necessary to protect the public from future crime and were not disproportionate to the danger the defendant posed to the public. *Regalo* at ¶ 16, 18. The court, therefore, vacated the defendant's consecutive

sentences and remanded to the trial court to impose concurrent sentences. *Id.* at ¶ 21. Although there are some similarities between the facts in this case and those in *Regalo* — e.g., both defendants entered guilty pleas to sexual offenses involving children and both defendants had no prior or subsequent criminal history — there are also some significant differences.

{¶ 25} This is not a case in which it would be futile to remand for resentencing because the record clearly and convincingly would not support a finding that consecutive sentences are not disproportionate to the danger the offender poses to the public. Although, as detailed above, the trial court "accept[ed] the fact that on paper the statutory sentencing factors in [R.C.] 2929.12 would indicate that [Hervey] is unlikely to reoffend," the trial court also appeared to indicate that, under the circumstances, consideration of those statutory factors alone may not fully capture the danger Hervey poses to the public. Hervey attributed his abuse of his victims to a substance abuse problem. Hervey consistently maintained at the sentencing hearing that he had been "unaware" of what he was doing when he abused these two young victims and that the years of sexual abuse was not his fault because, at the time, his brain was "really messed up" due to his drug use. Even though Hervey claimed to be "absolutely mortified" when he learned what he had done, he acknowledged that he "did it again" "[w]hen [he] was high." Although, in this case, the risk of Hervey reoffending may arguably be lessened based on Hervey's lack of subsequent criminal history and apparent sobriety, that risk still exists. There is nothing in the record before us to indicate

that Hervey participated in any substance abuse or sex offender treatment programs. The record reflects that Hervey's abuse stopped only when the victims left home and no longer had contact with Hervey.

{¶ 26} Considering the record before us in its entirety, "'the possibility exists for the trial court to make another finding to support the imposition of consecutive sentences,'" i.e., that consecutive sentences are not disproportionate to the danger Hervey poses to the public, "'[b]ut the trial court is free to impose concurrent sentences if it does not find that consecutive sentences are appropriate.'" *State v. Ferrell*, 8th Dist. Cuyahoga No. 104047, 2016-Ohio-7715, ¶ 10, quoting *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 46. Accordingly, we vacate Hervey's consecutive sentences and remand for the trial court to again consider whether the sentences on Counts 2 and 5 should be served consecutively to the sentences on Count 9 and 12 and, if so, to make all of the required findings on the record and to incorporate those findings into its sentencing journal entry.

{¶ 27} Hervey's assignment of error is sustained in part and overruled in part.

{¶ 28} Judgment vacated in part and remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., CONCURS;
CORNELIUS J. O'SULLIVAN, JR., J., DISSENTS (WITH SEPARATE OPINION)


CORNELIUS J. O'SULLIVAN, JR., J., DISSENTING:

{¶ 29} This court has repeatedly held that although the trial court must make the findings required by R.C. 2929.14(C)(4), the trial court has no obligation to state the reasons to support its findings. *State v. Crawley*, 8th Dist. Cuyahoga No. 102781, 2015-Ohio-5150, ¶ 13. Having made sufficient findings for the imposition of consecutive sentences, the trial court fulfilled the R.C. 2929.14(C)(4) requirements. Thus, if the trial court failed to specifically identify one of the factors that were considered in its proportionality analysis, this omission does not render the consecutive sentences contrary to law. *Crawley* at *id*. Herein, the court made the requisite findings, albeit not in a concise manner.

{¶ 30} This court has routinely affirmed consecutive sentences in cases where the trial court stated far less concerning disproportionality than the trial court did in the case at bar. In *State v. McGowan*, 8th Dist. Cuyahoga No. 105806, 2018-Ohio-2930, this court upheld consecutive sentences when the trial court's "statements on the record undoubtedly indicate that it considered the disproportionate prong with regard to both the seriousness of [appellant's] conduct

and the danger he posed to the public." *Id.* at ¶ 23. In *State v. Hicks*, 8th Dist. Cuyahoga No. 107055, 2019-Ohio-870, this court upheld the imposition of consecutive sentences when the trial court, after detailing the defendant's criminal history and prior unsuccessful attempts to give him "a chance at community control sanctions," stated only that "the sentences are not disproportionate to other sentences" in the county and state. *Id.* at ¶ 14.

{¶ 31} In *State v. Morris*, 2016-Ohio-7614, 73 N.E.3d 1010 (8th Dist.), the defendant argued that the trial court did not comply with R.C. 2929.14(C)(4) where the court stated the word "disproportionate" but did not specifically state that consecutive sentences would not be disproportionate to the seriousness of his conduct or disproportionate to the danger he posed to the public. *Id.* at ¶ 29. The *Morris* Court noted that the Ohio Supreme Court had already taken a more relaxed approach, finding that the requisite findings could be made if the reviewing court could "discern" them from statements made by the sentencing judge. *Id.* at ¶ 32, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659. The *Morris* Court concluded:

> Viewing the trial court's remarks in their entirety, we can discern from the trial court's statement — "I believe consecutive sentences in this matter are necessary to protect and punish, are not disproportionate" — findings that consecutive sentences are both not disproportionate to the seriousness of Morris' conduct and not disproportionate to the danger Morris poses to the public.

*Id.* at ¶ 34.

{¶ 32} In coming to this conclusion, the *Morris* Court reasoned that this court had "repeatedly rejected" arguments like the defendant's and pointed to several prior decisions from this court. *Id.* at ¶ 30-32 and citing *State v. Crawley*, 8th Dist. Cuyahoga No. 102781, 2015-Ohio-5150 (holding that the trial court's statement that consecutive sentences "are not disproportionate" is sufficient because the court does not have to identify the factors or reasons that were considered in its proportionality analysis); *State v. Amey*, 8th Dist. Cuyahoga Nos. 103000 and 103001, 2016-Ohio-1121, ¶ 15-19 (trial court's statement that consecutive sentences "would not be disproportionate" combined with statements regarding appellant's extensive criminal history and that appellant had not "responded favorably to sanctions previously imposed" satisfied proportionality finding); and *State v. Kirkman*, 8th Dist. Cuyahoga No. 103683, 2016-Ohio-5326, ¶ 3-5 (trial court's statement — "I don't believe it's disproportionate" — along with a reference to the defendant's criminal history and a need to protect the public is sufficient). *See also State v. Brown*, 8th Dist. Cuyahoga No. 108699, 2020-Ohio-1615, ¶ 15 (finding that trial court's statement that consecutive sentences are "not disproportionate" is sufficient to discern that the trial court considered disproportionality because court referenced presentence-investigation report, which included appellant's criminal history and risk of reoffending); *State v. Kamal*, 8th Dist. Cuyahoga No. 109781, 2021-Ohio-2261, ¶ 14 (stating that consecutive sentences are "not disproportionate to what you did in this matter" is sufficient when trial court's statements during hearing, when viewed in their entirety, clearly

indicate trial court considered proportionality); *State v. Bennett*, 8th Dist. Cuyahoga Nos. 108700 and 108749, 2020-Ohio-3453, ¶ 12 (trial court's statement "it's not disproportionate" is sufficient); *State v. Forston*, 8th Dist. Cuyahoga No. 108332, 2020-Ohio-569, ¶ 12; *State v. Wagner*, 8th Dist. Cuyahoga No. 109678, 2021-Ohio-3107, ¶ 14 (trial court's statement that "it is not disproportionate" is sufficient); *State v. Delmonico*, 8th Dist. Cuyahoga No. 108578, 2020-Ohio-3368, ¶ 59.

{¶ 33} More recently, this court found that "[w]hile the trial court did not explicitly mention the word 'proportionality' or specifically address the 'threat'" that the defendant posed:

> the totality of the court's statements demonstrate that it did make findings regarding both. The trial court explicitly stated that because [the defendant] had been found guilty of sexually assaulting three separate women on three separate occasions, his conduct demonstrated a need to protect the public through the imposition of consecutive prison sentences. We can discern from the record that the court found consecutive sentences were not disproportionate to the danger [the defendant] posed to the public.

*State v. Townsend*, 8th Dist. Cuyahoga No. 110525, 2022-Ohio-692, ¶ 17.

{¶ 34} What even a cursory review of cases from this district reveals is that this court has repeatedly upheld the imposition of consecutive sentences when the disproportionality finding can be discerned from the record. What *McGowan*, *Hicks,* and *Morris* and *each* of the above cited cases have in common is that this court has repeatedly upheld the imposition of consecutive sentences when the trial court said *less* regarding the disproportionate nature of the sentence than the trial court said in this case. Here, the trial court expressly made the statement that

consecutive sentences were not disproportionate to the seriousness of appellant's conduct, and we can excerpt specific references from the record demonstrating that the trial court also made the finding that the sentences were not disproportionate to the danger appellant poses to the public.

{¶ 35} The majority states as follows:

> Following a careful review of the record, we do not discern from the entirety of the trial court's statements at the sentencing hearing that the trial court — either expressly or "using different language" — made the finding that consecutive sentences are not disproportionate to the danger Hervey poses to the public. It is not clear from the transcript of the sentencing hearing that the trial court considered the danger the offender poses to the public, compared that factor to the sentence imposed on the defendant and determined that that comparison supported the imposition of consecutive sentences.

(Internal citations omitted). Majority Opinion, ¶ 21.

{¶ 36} I disagree. What is missing from the sentencing transcript, and what the Ohio Supreme Court has made clear is not necessary, are the exact words that appellant's "consecutive sentences are not disproportionate to the danger appellant poses to the public." It is clear, however, that the trial court considered the danger appellant poses to the public, compared that factor to the sentence imposed, and determined that comparison supported the imposition of consecutive sentences. *See State v. Tolbert*, 8th Dist. Cuyahoga No. 110249, 2022-Ohio-197, ¶ 48.

{¶ 37} During the sentencing hearing, defense counsel asked the trial court for a presentence-investigation report, stating, "we do have some experts that our office would pay for to determine or give the Court an indication as far as his

likelihood to reoffend as part of our mitigation to defend." In response, the trial court stated:

> I believe that as an officer of the Court you have made the strongest statutory argument that you could and I accept it. I accept the fact that on paper the statutory sentencing factors in [R.C.] 2929.12 would indicate that your client is unlikely to reoffend. The factors that specifically would so indicate — well, let me just give the factors that would support that *he won't reoffend* and *then I will give you the factors that would support otherwise.*
>
> * * *
>
> I'm required to consider if you are likely or unlikely to reoffend. That is what your attorney is asking for, to have this assessment done. I don't believe it is necessary because I'll accept what your attorney is saying. I'll accept the factors that would indicate that you are likely to reoffend or unlikely to reoffend. You don't have a criminal history. I understand that. *However, this went on for years and years.* So, while you never got charged with it or caught, had you been, you could have had charges for a long time, but there's no other charges elsewhere. You have expressed remorse, took responsibility, said you didn't know what you were doing; *but in the midst of all of this, you tell me that you were doing this because you were using drugs * * *.*
>
> * * *
>
> [B]ut I'll accept every factor that your attorney is arguing that would indicate statutorily against you reoffending, *but this went on for years and years and it is multiple victims.*
>
> * * *
>
> So we talk about *recidivism*. I'll accept what your attorney has to say. She's an officer of the Court. She is. I have to consider the seriousness of your conduct, and that's where you fail, because the factors that indicate that your conduct is more serious than conduct that ordinarily constitutes the offense statutorily include that the harm caused by you was exacerbated and felt more by the victims because of their tender age * * *.
>
> * * *

So when it comes to considering whether you're likely or unlikely to *reoffend*, I'll accept everything that [defense counsels have said].

* * *

When it comes to the *recidivism* factors, again, I'm going to deny your request to have that assessment completed as to whether your client is likely to reoffend. I'll accept all of your arguments.

* * *

But when it comes to the seriousness factors, sir, there's nothing that renders your conduct less serious. Nothing. These were children that regarded you as their father.

(Emphasis added.)

{¶ 38} Here, the trial court is clearly stating that, notwithstanding the arguments of appellant's attorneys and what a presentence investigation report would likely show, appellant is at risk of being a recidivist and his conduct is more serious.

{¶ 39} In sentencing appellant, the trial court stated:

It is necessary to punish, as I mentioned before. That's [R.C.] 2929.14(C)(4), and it is certainly not disproportionate to the seriousness of your conduct, Mr. Hervey. The history – I'm sorry, at least *two of the conducts were committed as a course of conduct. This was a pattern that went on and on*, and the harm caused to these two kids was so great that no single prison term would adequately reflect the seriousness of your conduct. I'm not making the finding that the history of criminal conduct demonstrates consecutive terms are necessary to protect the public but I will tell you this: I'm just listening to what [defense counsel] has to say on the recidivism piece. I say this qualifiably [sic]; because when you look at what happened, *there are multiple counts over a span of years* * * *.

(Emphasis added.)

{¶ 40} Again, it is clear from the record that the court is discussing appellant's likeliness to reoffend and chance of recidivism; the court continually makes the finding that it is sentencing him to consecutive sentences because these crimes were committed against multiple victims as a multi-year course of conduct.

{¶ 41} Recidivism, in general, is the repetition of criminal conduct by a person who had been earlier arrested and punished for such conduct. *Bouvier Law Dictionary Desk Edition* Recidivism (2012). A recidivist is one who commits a crime and commits it again, particularly after having been punished for an earlier commission. *Id.* Thus, in discussing appellant's likeliness to reoffend, the trial court is considering the danger posed to the public.

{¶ 42} I further consider that, during the sentencing hearing, the court heard directly from Jane Doe I, who came into court to face her abuser, and was read Jane Doe II's victim-impact statement. The victim of a crime has a right under R.C. 2930.14(A) to make a statement to the court prior to imposing sentence on the defendant. *State v. Taft*, 6th Dist. Huron No. H-18-003, 2019-Ohio-1565, ¶ 53. The victim is also permitted to present his or her statement to the court through a representative — who can be any person the victim designates— and the designated representative "may exercise the rights of the victim * * *." R.C. 2930.02(A); 2929.19(A). If the victim chooses to make a statement at sentencing through either means, the trial court is required to consider the statement along with all other sentencing considerations. R.C. 2930.14(B); 2929.19(B)(1).

{¶ 43} During her statement, Jane Doe I told the court that it was not until her early 20's that she learned that her younger sister had also been abused by appellant. She told the court that she has also learned of more victims — "It seemed the more I started to be open about what he had done with me, more girls kept coming out of the woodwork to share their similar story with me." Jane Doe I told the court that appellant's son warned her to never be alone with appellant and she knew that appellant's former wife stopped letting him see his own children after she learned of his crimes. Jane Doe I learned that she "was not his first victim and I also knew that I was not his last." Jane Doe I noted that appellant held jobs in "positions of power and trust, such as security guard and condominium maintenance" and explained how "his pattern of abuse involves building a sense of trust with his victims so they are submissive to his abuse." Moreover, according to Jane Doe I, appellant also practices martial arts with swords, "which makes him all the more domineering."

{¶ 44} R.C. 2929.19(A) requires that a victim-impact statement "present information relevant to the imposition of sentence in the case." R.C. 2930.14 "does not expressly limit the content of the victim-impact statement — it only sets forth what the court is *required to consider*. Other information is not forbidden by statute." (Emphasis added.) *Taft* at ¶ 54, citing *State v. Brown*, 146 Ohio App.3d 654, 660, 2001-Ohio-4266, 767 N.E.2d 1192 (1st Dist.).

{¶ 45} When the trial court stated, more than once, that appellant victimized multiple children over a period of years, it must be understood that the court was

taking the victim-impact statements into consideration. When the court stated, "multiple victims over a period of years" and "this is a course of conduct," it was summarizing its findings. Although the trial court could have stated, ad nauseam, the danger that appellant's vile and perverse activity posed to the public, the court instead summarized its finding, and this court has held time and again it is sufficient for the trial court to do so. The trial court's findings support consecutive sentences.

{¶ 46} The trial court's statements, considered as a whole, comply with R.C. 2929.14(C)(4). I would affirm the trial court's judgment.